Argued November 22, 1976, reversed January 17, reconsideration denied
February 23, 1977

METROPOLITAN SERVICE DISTRICT OF
PORTLAND, *Respondent,*

*v.*

DEPARTMENT OF ENVIRONMENTAL QUALITY,
*Appellant.*

(No. A 76 04 04698, CA 6506)

558 P2d 1264

W. Michael Gillette, Solicitor General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Raymond P. Underwood, Assistant Attorney General, Salem.

John R. Faust, Jr., Portland, argued the cause for respondent. On the brief were Hardy, Buttler, McEwen, Weiss & Newman and Dean P. Gisvold, Portland.

C. W. Leichner and Buss, Leichner, Barker & Nesting, Portland, filed a brief amicus curiae.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

THORNTON, J.

## THORNTON, J.

Defendant Department of Environmental Quality (DEQ) appeals from a determination in favor of plaintiff Metropolitan Service District of Portland, Oregon (MSD) in a statement of controversy proceeding (ORS ch 27). The controversy was framed by a jointly filed statement of the case which summarized the positions of the parties as follows:

"1. Plaintiff [MSD] is a municipal corporation, organized and existing under the provisions of ORS Chapter 268. [MSD] was formed by a vote of the people on May 26, 1970.

"2. Defendant [DEQ] is a department of the State of Oregon authorized to administer the pollution control bond funds, subject to the direction of the Oregon State Legislature, or, when the Legislature is not in session, the Emergency Board.

"3. On February 20, 1976, the Emergency Board authorized [DEQ] to loan pollution control bond funds to [MSD] when it adopted the following resolution:

" 'That the Department of Environmental Quality be authorized to loan the Metropolitan Service District up to $176,000 for the specific purpose of purchasing land identified as the Rossman Site.'

"4. [MSD] has developed and approved a Solid Waste Management Plan for the District. The Plan has been approved by the [DEQ]. The Rossman Property is an integral part of the Plan.

"5. On February 27, 1976 [MSD's] Board of Directors authorized the District to borrow up to $176,000 of pollution control bond funds from [DEQ] for the purpose of purchasing the Rossman site.

"6. [MSD] has satisfied all conditions precedent to obtaining this loan.

"7. [MSD] has requested [DEQ] to enter into the loan agreement as authorized by the Emergency Board and [DEQ] has refused to consider [MSD's] request upon the sole ground that [MSD] does not have the legal authority to borrow pollution control bond funds from the State.
* * *

"8. Were it not for [DEQ's] aforesaid position on

[ 115 ]

[MSD's] authority, [DEQ] would enter into the loan agreement forthwith.

"9. There is no dispute as to the facts. The question in controversy, which could be the subject of an action or suit in this [circuit] court with these parties [MSD] and [DEQ], is whether [MSD] has legal authority to borrow pollution control bond funds from the State of Oregon.

"* * * * *"

The trial court ruled that § 3 of Art XI-H of the Oregon Constitution granted authority for MSD to borrow pollution control bond funds from the State of Oregon and that § 3 of Art XI-H was "self-executing." Section 3 of Art XI-H of the Oregon Constitution provides:

"Notwithstanding the limitations contained in section 10, Article XI, of this Constitution, municipal corporations, cities, counties, and agencies of the State of Oregon, or combinations thereof, may receive funds referred to in section 1 of this Article, by contract, grant, loan or otherwise and may also receive such funds through disposition to the state, by sale, loan or otherwise, of bonds, notes or other obligations issued or made for the purposes set forth in section 1 of this Article."[1]

---

[1] Other relevant sections of Art XI-H are §§ 1 and 6, Oregon Constitution, which read as follows:

"Section 1. In the manner provided by law and notwithstanding the limitations contained in sections 7 and 8, Article XI, of this Constitution, the credit of the State of Oregon may be loaned and indebtedness incurred in an amount not to exceed, at any one time, one percent of the true cash value of all taxable property in the state:

"(1) To provide funds to be advanced, by contract, grant, loan or otherwise, to any municipal corporation, city, county or agency of the State of Oregon, or combinations thereof, for the purpose of planning, acquisition, construction, alteration or improvement of facilities for the collection, treatment, dilution and disposal of all forms of waste in or upon the air, water and lands of this state; and

"(2) To provide funds for the acquisition, by purchase, loan or otherwise, of bonds, notes or other obligations of any municipal corporation, city, county or agency of the State of Oregon, or combinations thereof, issued or made for the purposes of subsection (1) of this section."

"Section 6. The Legislative Assembly shall enact legislation to carry out the provisions of this Article. This Article shall supersede all conflicting constitutional provisions and shall supersede any conflicting provision of a county or city charter or act of incorporation."

Plaintiff's argument is essentially that the language "municipal corporations * * * may receive funds * * *" amounts to a constitutional grant of power to MSD, a municipal corporation, to borrow pollution control bond funds, and that this constitutional grant eliminates the necessity for specific statutory authority to borrow pollution control funds.

ORS ch 268, the enabling legislation for metropolitan service districts, specifies two methods by which a district may borrow funds: the district may, following an election which grants authority, borrow money by the issuance and sale of general obligation bonds, ORS 268.520(1), or revenue bonds, ORS 268.520(2), and the district may, without a prior election, borrow from any county or city with territory in the district, ORS 268.540(3).

In 1969 the Oregon legislature enacted ORS 468.195 to 468.260 to implement Art XI-H of the Oregon Constitution. Under these provisions DEQ was designated as the agency for the State of Oregon for the administration of the Pollution Control Fund. DEQ is authorized by ORS 468.220(1)(b) to "Acquire, by purchase, or otherwise, general obligation bonds or other obligations of any municipal corporation" issued in a manner and for a purpose consistent with Art XI-H. The implementing legislation required by § 6 of Art XI-H in this way tracks the statutory borrowing mechanisms available to metropolitan service districts.

We think that MSD's construction of § 3 of Art XI-H, accepted by the circuit court, is incorrect for the following reasons:

Art XI-H removes constitutional restraints on the borrowing power. Section 1 suspends the limitations on state assumptions of local debts contained in §§ 7 and 8 of Art XI of the Oregon Constitution. Section 3, on which plaintiff relies, is addressed specifically to the county debt limitation contained in § 10 of Art XI. Section 3 also delimits the types of entities, here public

entities, which may receive pollution control funds. A fair reading of § 3 is that municipal corporations may borrow pollution control funds in the manner provided by law, notwithstanding the § 10 inhibition against county debts in excess of $5,000. This reading is consistent with the fact that the state may loan pollution control funds "in the manner provided by law" (Art XI-H, § 1) and the fact that Art XI-H's implementing legislation, ORS 468.195 to 468.260 tracks MSD's statutory borrowing mechanisms.

■ An ambiguity is therefore present in the language "may receive" in the sense that it may imply an unrestricted right to borrow[2] or the language may mean simply that municipal corporations and counties, as opposed to private corporations, "may receive" funds in their ordinary statutory fashion notwithstanding constitutional debt limitations.

■ Given the ambiguity of the constitutional provision, generally accepted canons of statutory construction require that the language be strictly construed against an implied grant of the power to borrow.

> " 'Since municipal powers are required to be conferred in plain unambiguous terms, the general well-settled rule of construction is that a doubtful power is a power denied. That is, any ambiguity or doubt arising out of the terms employed in the grant of power must be resolved against the corporation and in favor of the public . . .' 1 McQuillin, Municipal Corporations, 2 ed., Rev. vol. 1, section 268." *Fullerton v. Central Lincoln Utility Dist.,* 185 Or 28, 38-39, 201 P2d 524 (1948).

*See also, State v. Port of Astoria,* 79 Or 1, 154 P 399 (1916); 3 Sutherland, Statutory Construction 81, 145, §§ 63.02, 64.08 (4th ed C. Dallas Sands 1974); 15 McQuillin, Municipal Corporations 25, § 39.17 (3d ed rev 1970).

---

[2]The ordinary and accepted meaning of "receive" is synonymous with that of "accept." Standard Oil Co. of Indiana v. United States, 164 F 376, 390 (7th Cir 1908). The words "may receive" obviously do not *entail* the right to borrow. While one who borrows does receive, one may receive, e.g., a grant, without borrowing.

■ We therefore hold that § 3 of Art XI-H of the Oregon Constitution merely suspends the debt limitation of § 10, Art XI, and delimits the types of entities that may receive pollution control funds and does not imply a general grant of power to MSD to borrow pollution control funds other than in the manner described in ORS chs 268 and 468.

Reversed.