Richard HOVET, Respondent,

v.

CITY OF BAGLEY, Appellant.

No. 81–1236.

Supreme Court of Minnesota.

Nov. 5, 1982.

---

Dickel, Johannson, Wall, Taylor & Rust, Ken Johannson and Richard C. Taylor, Crookston, for appellant.

Cann, Schmidt & Haskell and James W. Haskell, Bemidji, for respondent.

Stanley G. Peskar, League of Minnesota Cities, St. Paul, for amicus curiae.

PETERSON, Justice.

Plaintiff Richard Hovet, age 26, sustained paralyzing injuries when he made a running dive into shallow water (18–24″) from a dock at a beach owned and operated by the City of Bagley. Plaintiff sued the city, alleging the city was negligent in failing to give warning of the water's shallowness. The city moved to dismiss for failure to state a claim. It argued that the Minnesota Recreational Use Statute, Minn.Stat. § 87.01–.03 (1980) required plaintiff to allege that the city willfully took action to harm him, which plaintiff had not done. The district court denied the motion, certifying the issue as important and doubtful, and the city then appealed pursuant to Minn.R. Civ.App.P. 103.03(i). We affirm.

Decision in this case turns on a proper construction of the recreational use statute.

Briefly described, it relieves owners of land from liability for injuries caused by defects on the land to persons who enter the premises for recreational purposes and who do not give consideration to the owner for the privilege of entering on the land.[1] In this way, the legislature evidently intended to induce landowners to make their lands available to the public to increase the amount of outdoor area open for recreational purposes.[2]

Specifically at issue is construction of the definition of "owner," contained in Minn. Stat. § 87.021, subd. 3 (1980):

"Owner" means the possessor of a fee interest or a life estate, a tenant, lessee, occupant or person in control of the premises.

The city contends that it is an owner of its municipal beach, as "owner" is defined in the statute, and hence it is entitled to claim the protection of the recreational use statute.[3] However, a review of the titles of the bills passed by the legislature and of the statement of purpose contained in Minn. Stat. § 87.01 (1980) persuades us that the legislature did not intend cities to be protected by the statute.

In regard to the former, the court has stated, "The title of an act is properly to be

---

1. The operative sections of Minn.Stat. ch. 87 provide as follows:

    87.022. Except as specifically recognized by or provided in section 87.025, an owner of land owes no duty of care to render or maintain the premises safe for entry or use by others for recreational purposes.
    87.023. Except as specifically recognized by or provided in section 87.025, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
    (a) Extend any assurance that the premises are safe for any purpose;
    (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed;
    (c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.
    87.025. Nothing in this chapter limits in any way any liability which otherwise exists:
    (a) For conduct which, at law, entitles a trespasser to maintain an action and obtain relief for the conduct complained of;

    (b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received from the state or subdivision thereof by the owner for such lease shall not be deemed a charge within the meaning of this section.

2. The court has never construed any section of the recreational use statute. The instant case is one of first impression.

3. In 1979, at the time of the accident, the applicable law was as described above. During the 1982 session, the legislature amended the definition of "land," so that it now is explicitly limited to privately owned land. Act of February 12, 1982, ch. 373, § 1, 1982 Minn.Laws 154. The legislature has thereby determined not to grant the recreational use immunity to municipalities in cases arising in the future; thus the decision in this case will determine only cases arising before the 1982 amendment became effective.

considered in determining legislative intent (citing cases)." *Cleveland v. County of Rice,* 238 Minn. 180, 184, 56 N.W.2d 641, 644 (1953). In *Cleveland,* the court relied on language in the title of the act to interpret the operative section of the statute. The title to the first enactment of the recreational use statute, Act of April 20, 1961, ch. 638, 1961 Minn.Laws 1192, read:

> An act relating to public recreational use of *privately owned* lands or waters * * * (emphasis added).

The title of Act of June 7, 1971, ch. 946, 1971 Minn.Laws 1977, which added the definition of "owner" at issue in this case, read:

> An act relating to public use of *privately owned* land. * * * (emphasis added).

The titles indicate an intent to limit the exemption from tort liability to private persons.

A second indicator of legislative intent is the statement of purpose contained in the first section of the recreational use statute. Minn.Stat. § 87.01 (1980), provides:

> It is the policy of the state, in furtherance of the public health and welfare to encourage and promote the use of *privately owned* lands and waters by the public for beneficial recreational purposes, and the provisions of this chapter are enacted to that end.

(Emphasis added). Appellant City argues that the statement of purpose clause was adopted at a time when sovereign immunity prevailed; hence, cities needed no additional protection from liability.[4] However, in 1971—after abrogation of sovereign immunity—the section was reenacted to make purely technical amendments.[5] Thus, in 1971 the legislature had before it the express language that the purpose of the recreational use statute was to "promote the use of *privately owned* land." Act of June 7, 1971, ch. 946, § 1, 1971 Minn.Laws 1977 (emphasis supplied). At that time, sovereign immunity had been abrogated for 8 years. It seems reasonable to conclude that the legislature would not have reenacted the quoted passage if it intended cities to be protected by the statute. The titles of the bills and reenactment of the statement of purpose in 1971 offer persuasive evidence that the legislature did not intend that cities be deemed "owners" of land protected by the statute.[6]

Support for our decision can be found in a Wisconsin case, *Goodson v. City of Racine,* 61 Wis.2d 554, 213 N.W.2d 16 (1973), which involved facts and a recreational use statute very similar to those in the instant case. The Wisconsin statute relieved the "owner of premises" from liability to gratuitous recreational entrants onto the land; the statute contained no definition of "owner." After the statute was adopted, Wisconsin abrogated sovereign immunity. Goodson fell into a trench in a city park which the City of Racine allegedly was negligent in maintaining. When Goodson sued Racine, it moved to dismiss based on the recreational use statute. The trial court denied the motion and the city appealed.

The Wisconsin court in *Goodson* noted that the statute was in derogation of the common law and hence should be strictly construed. Next, the court noted that the title of the bill referred to "landowners who open private lands for recreational purposes." From this fact, the court inferred

---

4. In *Spanel v. Mounds View School District,* 264 Minn. 279, 118 N.W.2d 795 (1962), the court unanimously declared that sovereign immunity for governmental subdivisions would be prospectively overruled at the close of the next legislative session and invited the legislature to adopt a statute to govern the matter. In response, the legislature adopted Minn.Stat. ch. 466 (1980), which abrogated the sovereign immunity defense for political subdivisions, set a limit on the total liability of the subdivision and authorized purchase of liability insurance.

5. The changes related to the proper codification format.

6. This conclusion is also supported by a review of the tape recording of the minutes of the May 8, 1971, Senate Judiciary Committee meeting, at which the 1971 definitions were discussed. Chairman William Dosland stated that the bill related to "public recreational use of private land." Senator Kelton Gage, in the course of explaining the bill, stated that it was designed to protect a "farmer or private landowner" who allows the public free recreational use of his land. At no point was there any indication that "owner" was intended to include municipalities.

that the legislature did not intend to exempt municipalities from liability. The court dismissed the city's argument that cities were to be treated as private individuals due to abrogation of sovereign immunity, by stating that the purpose of the act was to increase the amount of land available for recreational activities. Since municipalities have always opened their land to the public, the legislative purpose would not be served by granting immunity to the city. Finally, the court dismissed as "frivolous" the city's contention that the recreational use statute denied equal protection, in light of the intent to open up more land for recreational use. 213 N.W.2d at 20.[7] We find the *Goodson* opinion to be well reasoned, and we agree with its conclusion.

The object of statutory construction is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1980). Based on the titles of the bills and reenactment of the statement of purpose in 1971, we conclude the legislature did not intend municipalities to be protected landowners within the recreational use statute. Therefore, the district court properly denied the city's motion to dismiss the complaint for failure to state a cause of action, where the complaint alleged the city had been negligent in the operation of its municipal beach.

Affirmed.

---

**7.** *Amicus* League of Minnesota Cities suggests that a decision adverse to the city will be constitutionally suspect under equal protection analysis, as persons injured on city-owned land will be treated differently from those injured on state or private land. We concur with the *Goodson* court in labelling this argument "frivolous," given that neither a fundamental right nor a suspect classification is involved. The standard of review is whether there is any rational basis for the legislature's act: the desire to promote public recreational use easily meets the rationality test.