OAKLAND COUNTY v STATE OF MICHIGAN

Docket No. 90911. Submitted February 10, 1987, at Lansing. Decided July 7, 1987. Leave to appeal applied for.

Oakland County and the Oakland County Executive brought an action in the Court of Claims against the State of Michigan, the Director of the Office of Criminal Justice, and other state officials. Plaintiffs alleged that defendants owed them $422,000 under 1978 PA 416, MCL 51.77; MSA 5.868(17), the statute providing for state grants through the Office of Criminal Justice to counties for patrol of secondary roads by their respective sheriff's departments, monitoring of traffic violations, enforcement of criminal laws, motor vehicle accident investigations, and for providing emergency assistance to persons on or near the secondary roads patrolled. Oakland County had received grants pursuant to the statute from 1978 until 1983. However, its application for additional grants was denied on April 29, 1983, by the Director of the Office of Criminal Justice, who determined that the county was ineligible from further grants, under a provision of the statute conditioning eligibility upon nonreduction in expenditures for road patrol or in levels of road patrol services, by virtue of a reduction in the number of officer positions for secondary road patrol duty funded by the county from forty-eight positions in 1978 to twenty-five positions in 1983. In addition to these positions exclusively funded from the county's general fund, the Oakland County Sheriff's Department also had secondary road patrol positions funded jointly by the county and its townships numbering thirty-two in 1978 and sixty-four in 1983. the Court of Claims, James T. Kallman, J., granted summary disposition in favor of plaintiffs, ruling that Oakland County had maintained eligibility for further grants since the total number of secondary road patrol positions, disregarding the manner of funding, had increased

REFERENCES

Am Jur 2d, Administrative Law §§ 233 *et seq.*

Am Jur 2d, Sheriffs, Police and Constables § 47.

See the annotations in the Index to Annotations under Finances, Funds, and Financial Aid.

See the annotations in the Index to Annotations under Statutes.

from eighty in 1978 to eighty-nine in 1983. Defendants appealed.

The Court of Appeals *held:*

The statue at issue clearly and unambiguously refers only to a county and its level of expenditure when addressing the criteria for determining a county's eligibility for grants. The trial court thus erred in considering the officer positions funded by both the county and its townships when determining Oakland County's eligibility.

Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION — ADMINISTRATIVE INTERPRETATION.

The construction given to a statute by those charged with executing it, although not binding on the courts, is entitled to the most respectful consideration and ought not be overruled without cogent reasons.

2. SHERIFFS AND CONSTABLES — AGREEMENT FOR SECONDARY ROAD PATROL AND TRAFFIC ACCIDENT PREVENTION — ELIGIBILITY FOR GRANTS.

The criteria for eligibility set by the statute which provides for a grant by the state to a county for a program of secondary road patrol and traffic accident prevention by the county sheriff's department relates only to the county; thus, under a requirement which mandates that a county may not decrease the level of road patrols or the county's expenditure therefor, partial funding by the county's townships may not be considered in determining the county's eligibility for the state grant (MCL 51.76, 51.77; MSA 5.868[16], 5.868[17]).

*John F. Ross, Jr.,* Assistant Corporation Counsel, for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon* and *Merry A. Rosenberg,* Assistant Attorneys General, for defendants.

Before: HOOD, P. J., and MACKENZIE and R. M. PAJTAS,* JJ.

HOOD, P.J. Defendants appeal as of right from

* Circuit judge, sitting on the Court of Appeals by assignment.

the opinion and order entered February 13, 1986, by the Court of Claims in which the court granted plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(10) and ordered defendants to pay $422,000 to plaintiffs under 1978 PA 416, specifically MCL 51.77; MSA 5.868(17).

MCL 51.77; MSA 5.868(17) provides for county sheriff departments to receive a grant from Michigan's Office of Criminal Justice to help defray the cost of road patrol if the county meets certain qualifications. A history of the act in question will aid in understanding the issue on appeal. Neither the common law nor Michigan statutory authority impose a duty on the sheriff of a county to supply full-time road patrol on all county roads and highways. *Brownstown Twp v Wayne Co,* 68 Mich App 244, 251; 242 NW2d 538 (1976), lv den 399 Mich 831 (1977). In *Brownstown Twp,* several townships sued the Wayne County Board of Commissioners to provide the necessary funds to enable the Wayne County Sheriff to continue road patrol service in outlying county areas. This Court stated that a stricter duty to maintain law and order was imposed upon the sheriff in areas of the county not adequately policed by local authorities, but added that the sheriff was not required to regularly patrol those areas. *Id.* According to this Court, "[A]ll that is minimally required is that the sheriff exercise reasonable diligence to (1) keep abreast of those areas inadequately policed, which may require limited vigilance, (2) monitor criminal activity or unusual conditions in the county, and (3) respond professionally to calls for assistance from the citizenry." *Id.*

Act 416 arose from the consensus that many of the roads in Michigan were inadequately patrolled and that enforcement of traffic regulations and availability of police officers to the public would be

significantly enhanced by placing greater emphasis on road patrols.[1] The Legislature established a list of services to be provided by a county sheriff's department which would receive grant monies under Act 416. These services, specified by MCL 51.76(2); MSA 5.868(16)(2), include: patrolling and monitoring traffic violations; enforcing the criminal laws of Michigan, violations of which are observed by or brought to the attention of the sheriff's department while providing the patrolling and monitoring; investigating accidents involving motor vehicles; and providing emergency assistance to persons on or near a highway patrolled and monitored. Funding for these services, and only these services, was to be provided by a grant. MCL 51.77(2); MSA 5.868(17)(2). The county sheriff's department would be required to provide the expanded services only to the extent that state funds were provided. MCL 51.77(3); MSA 5.868(17)(3). Act 416 established a formula for determining the amount of grant funds to be allocated to the county sheriff's department for these purposes. MCL 51.77(4); MSA 5.868(17)(4).

A less significant purpose of Act 416 was to delineate the responsibilities of the various law enforcement agencies in providing county road patrol services in order to reduce friction between the agencies.[2]

In short, Act 416 was designed to enhance county road patrol services by providing funds to support those efforts. It was designed to supplement, and not replace, existing county road patrol efforts. Act 416 was guided by the philosophy that if the state was going to mandate greater performance by a county sheriff's department, the state,

---

[1] Legislative analysis of Senate Bill 1682, ultimately enrolled as 1978 PA 416.

[2] Id.

in fairness, ought to provide a supplement to local funding. It was believed that enhanced road patrol services would reduce economic loss from motor vehicle accidents as well as reduce highway deaths and personal injuries.

The controversy in this case concerns the conditions which the Legislature attached to receipt of grant funds. These conditions are contained in MCL 51.77(1); MSA 5.868(17)(1) in a "maintenance of effort" (MOE) clause. The MOE clause is emphasized in the following passage:

> Before a county may obtain its grant from the amount annually appropriated for secondary road patrol and traffic accident prevention to implement section 76, the county shall enter into an agreement for the secondary road patrol and traffic accident prevention services with the office of criminal justice. A county applying for a grant for secondary road patrol and traffic accident prevention shall provide information relative to the services to be provided under section 76 by the sheriff's department of the county, which information shall be submitted on forms provided by the office of criminal justice. By April 1 of each year following a year for which the county received an allocation, a county which receives a grant for secondary road patrol and traffic accident prevention shall submit a report to the office of criminal justice on a form provided by the office of criminal justice. The report shall contain the information described in subsection (6). *An agreement entered into under this section shall be void if the county reduces its expenditures or level of road patrol below that which the county was expending or providing immediately before October 1, 1978, unless the county is required to reduce general services because of economic conditions and is not merely reducing law enforcement services.* [MCL 51.77(1); MSA 5.868(17)(1).]

The MOE clause can be divided into separate

criteria which, if violated, will render a county ineligible for grant funds. The first criterion provides that a county may be ineligible "if the county reduces its expenditures . . . below that which the county was expending . . . immediately before October 1, 1978." The second criterion provides that a county may be ineligible "if the county reduces its . . . level of road patrol below that which the county was . . . providing immediately before October 1, 1978." An exception to ineligibility obtains where "a county is required to reduce general services because of economic conditions and [the county] is not merely reducing law enforcement services." MCL 51.77(1); MSA 5.868(17)(1).

The purpose of the MOE clause was to assure that a recipient county maintained the level of funding and the level of road patrol services that existed immediately prior to October 1, 1978, the effective date of Act 416. General guidelines issued on January 5, 1979, to the chairpersons of county boards of commissioners included the following statement:

> [I]nasmuch as it is legislative intent that P.A. 416 funds not supplant county budget funding, the county budget for road patrol and the number of road-patrol officers authorized in the county budget prior to 1 October 1978 must be maintained.[3]

From 1978 until 1983, plaintiffs successfully applied for and were awarded grant monies under Act 416. However, on April 29, 1983, plaintiffs were informed by the Office of Criminal Justice (OCJ), the agency responsible for disbursing the

___

[3] January 5, 1979, letter from William M. Nugent, Acting Administrator of the Office of Criminal Justice Programs, to chairpersons of county boards of commissioners, p 2.

grants, through a letter written by its director, Patrica A. Cuza, that plaintiffs no longer satisfied the eligibility criteria established by MCL 51.77(1); MSA 5.868(17)(1). After negotiations failed, plaintiffs filed the instant suit.

The dispute centers on whether "contractual" sheriffs who were funded only partially by plaintiffs' county fund could be taken into account in determining the amount of road patrol the county was providing in 1983. The parties agree that the amount of money expended by the county increased from 1978 to 1983. The dispute centers on whether the level of road patrol provided by the county in 1983 declined below the 1978 level. A review of the data submitted by plaintiffs reveals that in 1978 the county employed eighty road officers devoted to road patrol. This number included forty-eight positions fully funded by the county's general fund and thirty-two positions funded by a combination of the county's general fund and township funds. In 1983, the number of positions fully funded by the county's general fund decreased to twenty-five, while positions funded jointly by county and township funds increased to sixty-four, making a total of eighty-nine road officers. In the April 29 letter to plaintiffs, ocj based its decision to deny the grant upon the reduction in the number of road patrol positions funded by the county's general fund from forty-eight positions in 1978 to twenty-five positions in 1983. Ocj took the position that "contractual" officers, i.e., those supported by the receipt of noncounty general fund monies, could not be included in meeting the service level of 1978. Ocj supported that conclusion by referring to the statutory language "county was expending or providing," and noting its focus is on a county effort, and not combined local government effort. Further, ocj asserted that

its position was consistent with standard legal interpretations of similar phrases. OCJ pointed out that the forms and explanatory materials used in the administration of Act 416 had consistently been based on its interpretation from the inception of the program. Finally, OCJ pointed out that to include contractual positions would require counties which suffer a reduction in contractual positions below the 1978 level to have to replace the contractual positions at county expense in order to retain eligibility. In other words, those counties would experience direct added costs. In contrast, the exclusion of contractual positions merely results in a loss of potential savings to counties which increase the number of contractual positions. OCJ did allow a reduction of five positions due to the county's 10.7 percent reduction in general services personnel from 1978 to 1983 due to economic conditions. Thus, OCJ determined that plaintiffs would have to increase the number of road patrol officers to forty-three in order to receive the grant.

The Court of Claims, in determining whether the county provided at least as many road officers in 1983 as in 1978, included the sixty-two which were partially funded by the townships, finding the total number of officers in 1983 to be eighty-nine. The court found that the county expended more money and provided more deputy-hours of service in 1983 than in 1978 for road patrol services.

Plaintiffs argued below and argue on appeal that since the proportion of county funds used for the contract deputies could support 17.38 fully funded officers, that amount added to the twenty-five fully funded officers equals 42.38 officers, certainly within the "spirit and intent" of the act and OCJ's requirement of forty-three officers. The court's

opinion does not indicate whether the court adopted this position; rather, the opinion relied solely on the gross number of officers assigned to road patrol duty in 1983—eighty-nine, compared to the gross number of eighty in 1978.

We feel that plaintiffs and the lower court have erroneously interpreted the statute. The statute clearly states that an agreement shall be void if "*the county* reduces its . . . level of road patrol below that which *the county* was . . . providing" before October 1, 1978 (emphasis added).

In *Sam v Balardo,* 411 Mich 405, 417-418; 308 NW2d 142 (1981), our Supreme Court reiterated the words of Justice COOLEY in *People ex rel Twitchell v Blodgett,* 13 Mich 127, 167-168 (1865), describing the "foremost rule of statutory construction":

> "There are certain well-settled rules for the construction of statutes, which no court can safely disregard. Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and intelligible. The fair and natural import of the terms employed in view of the subject matter of the law, is what should govern."

The language used by the Legislature in the MOE clause referred to "the county." If the Legislature had intended to refer to "the county and other local units of government" it could have done so in express language. However, the Legislature did not do so. Although the Legislature did not further define the eligibility criteria, it appears from the material submitted by the parties that road patrol funded in a mixed fashion, i.e., by general fund

monies and township contracts, existed at the time that Act 416 was enacted. Presumably, the Legislature was aware of the prevalence of such arrangements as well as other funding sources. The Legislature could have determined that a minimum commitment was required from each county, without outside sources, for eligibility for grant funds.

The language of the statute is clear and unambiguous. In light of the purpose of the legislation, and the language used, we believe that the position of defendants is the proper one. Although there is no case law directly on point to guide this Court, we refer to the rule of strict construction applied to statutes granting economic benefits. An excellent discussion of this proposition is contained in 3 Sutherland, Statutory Construction (4th ed), §§ 63.02, 63.03 and 64.08.

The rule of strict construction obtains with respect to monetary grants as a means of guarding against unauthorized and unwarranted dissipation of public funds by ascertaining that all expeditures out of the public treasury are clearly authorized. A grant-in-aid is a method by which one level of government, i.e., the state, which owes no duty to support a function, i.e., a county road patrol program, undertakes the contribute to it financially. The grant is made in order to encourage the recipient to pursue policies which the grantor desires to promote, but which it is either constitutionally or politically unable to carry out by direct action. Thus, the grant is usually made with conditions. The condition is that the money be used for the purpose intended by the grantor and that certain results be obtained with the money received. This is essentially the mechanism employed in Act 416. See 91 CJS, United States, § 122, Disbursement of Funds, pp 301-302. Al-

though the interpretation given by the Court of Claims yields results favorable to Oakland County, Oakland County is but one of many counties in Michigan. That interpretation may render the administration of the program more difficult or may yield results not intended by the Legislature.

The construction given to a statute by those charged with executing it, although not binding on the courts, is entitled to the most respectful consideration and ought not be overruled without cogent reasons. *Production Credit Ass'n of Lansing v Dep't of Treasury,* 128 Mich App 196, 197-198; 339 NW2d 871 (1983). The interpretation advanced by defendants has been in existence since the inception of the program. The interpretation is entitled to deference, even if it is not controlling, especially since Act 416 involves a purely voluntary program. Plaintiffs are under no obligation to provide the enhanced road patrol service if they do not receive grant funds. Just as there is no sanction for nonparticipation in the program, there is no entitlement to the funds.

In short, we conclude that the interpretation accorded the MOE clause by defendants is not erroneous as a matter of law. The language is plain and unambiguous and should be enforced as written. Defendants' restrictive construction is supported by the rule of strict construction applied with respect to monetary grants. Finally, defendants' interpretation is entitled to deference absent cogent reasons to the contrary.

The decision of the Court of Claims is reversed.