445 S.E.2d 238

**Robert James STAMPER, an Infant Who Sues by his Next Friend and Natural Guardian, Cynthia STAMPER, and Cynthia Stamper, Individually, Plaintiffs Below, Appellants,**

v.

**The KANAWHA COUNTY BOARD OF EDUCATION, a Public Corporation, Defendant Below, Appellee.**

No. 21934.

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1994.

Decided May 27, 1994.

John Einreinhofer, William M. Walls, Meyer & Ford, Charleston, for appellants.

J. Victor Flanagan, Travis S. Haley, Cleek, Pullin, Knopf & Fowler, Charleston, for appellee.

MILLER, Justice:

The appellants and plaintiffs below, Robert James Stamper, an infant, and Cynthia Stamper, his natural guardian and next friend, appeal an order of the Circuit Court of Kanawha County granting summary judgment in favor of the defendant, the Kanawha County Board of Education (Board). The infant plaintiff was injured while playing basketball on a court owned by the Board. The issue is whether the provisions of W.Va.Code, 19-25-1, *et seq.* (Act), limiting the liability of landowners, are applicable to county boards of education. The circuit court held that the Act did apply, and the plaintiffs appeal.

The infant plaintiff was injured in August, 1992, while playing basketball at the outdoor court at Pratt Elementary School. He attempted to shoot a basketball and came down on an uneven surface on the court, which he characterized as a "rut." This action caused him to suffer torn ligaments to his right ankle. The school was not in session and the basketball game was not sponsored by the school. The parties agree that the plaintiff was in a recreational basketball game with friends. The parties also agree that the outdoor basketball court was kept open for the general public for recreational use and *no fee was charged.*

The Board relied on language in W.Va. Code, 19-25-2 (1986), which generally provides that the owner of real property who permits persons to use the land for recreational purposes owes no duty of care to keep the premises in a safe condition or warn of a dangerous or hazardous condition.[1] It contended that this immunity was applicable to real property owned by the Board.

On the other hand, the plaintiffs argue that the Board overlooks W.Va.Code, 19-25-1 (1986), that sets out the legislative purposes of the Act.[2] They contend that this section, along with the definition of "land" and "owner" contained in W.Va.Code, 19-25-5(a)[3] and (b)[4] (1986), leads to the conclusion that the Act was designed only for private landowners.

Furthermore, the plaintiffs maintain that there is a conflict between this general act and the more specific provisions of the Governmental Tort Claims and Insurance Reform Act, W.Va.Code, 29-12A-1, *et seq.*, which is applicable to political subdivisions such as county boards of education. *See* W.Va.Code, 29-12A-3(c) (1986). Specifically, W.Va.Code, 29-12A-4(c)(3) and (4) (1986), permit liability claims to be filed against a political subdivision for injuries or death aris-

1. W.Va.Code, 19-25-2, provides:
   "Subject to the provisions of section four [§ 19-25-4] of this article, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational or wildlife propagation purposes, or to give any warning of a dangerous or hazardous condition, use, structure or activity on such premises to persons entering for such purposes.
   "Subject to the provisions of section four of this article, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational or wildlife propagation purposes does not thereby (a) extend any assurance that *the premises are safe for any purpose, or* (b) confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons."

2. W.Va.Code, 19-25-1, provides:
   "The purpose of this article is to encourage owners of land to make available to the public land and water areas for recreational or wild-

life propagation purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon."
This section was amended in 1993 by adding "military training or" before "recreational."

3. W.Va.Code, 19-25-5(a), provided: "The term 'land' shall include, but not be limited to, roads, water, water-courses, private ways and buildings, structures and machinery or equipment thereon when attached to the realty[.]" This section was rewritten in 1993. In the 1993 version, subsection (a) was replaced by subsection (2). The language in both versions is substantially similar.

4. W.Va.Code, 19-25-5(b), provided: "[T]he term 'owner' shall include, but not be limited to, tenant, lessee, occupant or person in control of the premises[.]" Subsection (b) was replaced in 1993 by almost identical language, which now is contained in subsection (3).

ing from the negligent failure to maintain its property.[5]

We have not had occasion to consider the question of the Act's coverage of anyone other than private owners. Our only case discussing the Act is *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880 (1975), which involved a private landowner. The issue in *Kesner* was whether the landowner fell within the Act's exception of charging someone to enter the land, and, thus, was not afforded the Act's general protection from liability.[6] We concluded in *Kesner* that the landowner made a charge and, therefore, could be held liable for the negligent condition of his premises, stating in Syllabus Point 2: *"W.Va.Code* 1931, 19–25–1 *et seq.*, as amended, does not limit the common-law liability of a landowner, or of a lessee in control of the premises, to those who enter the premises as business invitees and suffer injury thereon."

Although not discussed by the parties, it appears that our Act is derived from a Model Act proposed in 24 *Suggested State Legisla-* *tion* 150 (1965). This Model Act was developed by the Committee of State Officials on Suggested'State Legislation of the Council of State Governments. The Model Act is entitled "PUBLIC RECREATION ON PRIVATE LANDS: LIMITATIONS ON LIABILITY."

The introduction of the Model Act states, in part, that "[i]n something less than one-third of the states, legislation has been enacted limiting the liability of private owners who make their premises available for one or more public recreational uses."[7] 24 *Suggested State Legislation* at 150. The introduction goes on to point out the need for additional recreational areas for the public and concludes that without some limitation on tort liability, private owners would be reluctant to open their land to public recreational uses.[8]

In Section 1 of the Model Act, the purpose of the Model Act is expressed in terms quite

---

5. W.Va.Code, 29–12A–4(c)(3) and (4), provide:

   "Subject to sections five and six [§§ 29–12A–5 and 29–12A–6] of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

   \* \* \*

   "(3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance....

   "(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions[.]"

   W.Va.Code, 29–12A–5(a), referred to above, provides certain immunities from liability for political subdivisions. Immunity is extended as to (a) snow, ice, or other weather or natural conditions; (b) natural condition of unimproved property; (c) failure to inspect property; and (d) operation of dumps and landfills. None of the foregoing appear to be applicable to the facts of this case. W.Va.Code, 29–12A–6, referred to in W.Va.Code, 29–12A–4(c), is a procedural statute dealing primarily with statutes of limitations. It does not contain substantive limitations.

6. The particular language addressed in *Kesner* is found in W.Va.Code, 19–25–4 (1965), which states, in part:

   "Nothing herein limits in any way any liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous or hazardous condition, use, structure, or activity, or (b) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land other than the amount, if any, paid to the owner of the land by the State or any agency thereof, or any county or municipality or agency thereof."

   The most recent amendment in 1986 made no significant changes to this part of the 1965 version.

7. The United States Court of Appeals in *Kleeper v. City of Milford, Kansas*, 825 F.2d 1440, 1444 (10th Cir.1987), in speaking of a recreational use statute, stated: "Similar legislation has been enacted in nearly all of the fifty states, although in some states the RUS statute is referred to by other names, such as landowner's liability statute or a sightseer statute."

8. The Model Act contains this statement: "The suggested act which follows is designed to encourage availability of private lands by limiting the liability of owners to situations in which they are compensated for the use of their property and to those in which injury results from malicious or willful acts of the owner."

similar to Section 1 of our Act.[9] The same is true of the definitional language of "land" and "owner" contained in Section 2 of the Model Act.[10] Moreover, it is clear that W.Va.Code, 19–25–2, limiting the duty of a landowner,[11] is directly patterned after Sections 3 and 4 of the Model Act.[12]

In a number of jurisdictions, courts have had occasion to decide whether a state's recreational use act limiting liability includes property owned by governmental entities. One of the most extensive discussions of this issue is found in *Monteville v. Terrebonne Parish Consolidated Government,* 567 So.2d 1097, 1100 (La.1990), where the Supreme Court of Louisiana began by noting: "The great majority of courts in other states interpreting recreational use statutes have held that because the statutes are in derogation of the common law and because they limit the duties of landowners in the face of a general expansion of premises liability principles, they must be strictly construed." (Citations omitted). We recognized in *Rosier v. Garron, Inc.,* 156 W.Va. 861, 867, 199 S.E.2d 50, 54 (1973), that "statutes in derogation of common law will be strictly construed. *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938); *Stephenson v. Cavendish,* 134 W.Va. 361, 59 S.E.2d 459 (1950)."

The court in *Monteville* went on to observe that recreational use statutes grant "immunities or advantages to a special class of landowners against the general public" and that "[i]t is an established principle that legislative grants of such rights, powers, privileges, immunities or benefits as against the general public, as distinguished from a right against some other party, should be construed strictly against the claims of the grantee." 567 So.2d at 1101. (Citations noted).[13] The Louisiana Supreme Court then proceeded to point out that its recreational use statute was patterned after the Model Act and quoted at length the commentary in the Model Act which stressed the need for private landowners to make available land for public recreational purposes. It observed that other courts and commentators concluded that "many aspects of the enactment of the recreational use-immunity legislation strongly indicate that it was intended to benefit only

**9.** Section 1 of the Model Act states: "The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Section 1 of our Act contained in W.Va.Code, 19–25–1, is set out in note 2, *supra.*

**10.** Section 2 of the Model Act states, in part:

"(a) 'Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

"(b) 'Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises."

See notes 3 and 4, *supra,* for our definition of "land" and "owner" found in W.Va.Code, 19–25–5.

**11.** See note 1, *supra,* for the text of W.Va.Code, 19–25–2.

**12.** Sections 3 and 4 of the Model Act state:

"*Section 3.* Except as specifically recognized by or provided in Section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or

activity on such premises to persons entering for such purposes.

"*Section 4.* Except as specifically recognized by or provided in Section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

"(a) Extend any assurance that the premises are safe for any purpose.

"(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

"(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons."

**13.** The court in *Monteville,* 567 So.2d at 1101, cited these authorities:

"See *Gundy v. Ozier,* 409 So.2d 764 (Ala.1981); *Carper v. New Castle County Board of Education,* 432 A.2d 1202 (Del.1981); *Prudential Insurance Co. of America v. City of Boston,* 369 Mass. 542, 340 N.E.2d 858 (1976); *Schisler v. Merchants Trust Co. of Muncie,* 228 Ind. 594, 94 N.E.2d 665 (1950); *Oakland County v. State,* 161 Mich.App. 335, 410 N.W.2d 812 (1987); *Katsaris v. Cook,* 180 Cal.App.3d 256, 225 Cal.Rptr. 531 (1986); *Metropolitan Service District of Portland v. Department of Environmental Quality,* 28 Or.App. 113, 558 P.2d 1264 (1977); *Western Nuclear, Inc. v. Andrus,* 475 F.Supp. 654 (D.Wyo.1979)."

private land owners." 567 So.2d at 1102. (Some citations noted).[14]

■ We agree with the *Monteville* court that the Model Act was designed to benefit private landowners. Our Act substantially parallels the Model Act, as did the Louisiana statute. Much the same result was reached in *Hovet v. City of Bagley*, 325 N.W.2d 813 (Minn.1982), and *Goodson v. City of Racine*, 61 Wis.2d 554, 213 N.W.2d 16 (1973). *Cf. City of Bloomington v. Kuruzovich*, 517 N.E.2d 408 (Ind.App.1987). We recognize some jurisdictions have reached a different result in regard to their recreational use acts. However, some of these jurisdictions based their decisions on acts that differ from the Model Act, indicating coverage is available to the governmental landowner.[15]

Beyond this analytical background on the historical basis for our recreational use act, there exist other cogent reasons why we believe the legislature did not intend to make it applicable to public property. In 1965 when the Act was passed, there existed constitutional immunity barring suits against the State and its agencies under Section 35 of Article VI of the West Virginia Constitution.[16] This immunity continues to exist, as we recognized in *Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 296, 359 S.E.2d 124, 129

(1987): "This constitutional grant of immunity is absolute and, as we have consistently held, cannot be waived by the legislature or any other instrumentality of the State." (Citations omitted).

Moreover, during this same period, there existed judicially created immunity against tort actions for municipalities. This immunity was not recognized as being abolished until *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977). The same type of court-created immunity existed as to county commissions and county boards of education which, along with municipalities, constitute the majority of our political subdivisions. Both of these immunities also were abolished. *See Gooden v. County Comm'n*, 171 W.Va. 130, 298 S.E.2d 103 (1982); *Ohio Valley Contractors, Inc. v. Board of Educ.*, 170 W.Va. 240, 293 S.E.2d 437 (1982). Thus, with this type of immunity against suits existing for state and local governments in 1965, it is difficult to conceive that the legislature intended to extend additional land use immunity to these bodies.

Finally, we are brought back to the point raised earlier. When the legislature enacted the Government Tort Claims and Insurance

14. For this principle, the court in *Monteville*, 567 So.2d at 1102–03, cited:

"*Copeland v. Larson*, 46 Wis.2d 337, 174 N.W.2d 745 (1970); Page, The Law of Premises Liability, § 5.14 at 117 (2d ed. 1988); Comment, Landowner Liability Under the Wyoming Recreational Use Statute, 15 Land & Water L.Rev. 649, 650 (1980); Note, Torts–Statutes–Liability of Landowners to Persons Entering for Recreational Purposes, 1964 Wis. L.Rev. 705, 709 (1964).... *Hovet v. City of Bagley*, 325 N.W.2d 813 (Minn.1982); Barrett, Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability, 53 Wash.L.Rev. 1, 2 (1977); Annotation, Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User, 47 A.L.R.4th 262, 270 (1986)."

15. *See Curran v. City of Marysville*, 53 Wash.App. 358, 361, 766 P.2d 1141, 1143 (1989) (stating that its recreational use statute was amended in 1972 "to expressly include both public and private landowners."); *Bonewell v. City of Derby*, 236 Kan. 589, 591, 693 P.2d 1179, 1181 (1985), (where the Supreme Court of Kansas relied upon

the Kansas Tort Claims Act, K.S.A.1980 Supp. 75–6104, which generally states that a governmental entity or an employee is not liable for injuries on public property " 'used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury....' ") Another approach is to analyze the recreational use act without regard to its genesis in the Model Act, and find that it is broad enough to cover a governmental entity. *See Scrapchansky v. Town of Plainfield*, 226 Conn. 446, 627 A.2d 1329 (1993); *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981).

16. Section 35 of Article VI of the West Virginia Constitution states:

"The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

Reform Act in W.Va.Code, 29–12A–1, *et seq.,* it proceeded without any reference to the recreational use act. There are provisions in W.Va.Code, 29–12A–4(c)(3) and (4), which allow liability claims to be filed against political subdivisions for injuries or death resulting from the negligent failure to maintain property.[17]

 If the legislature believed it gave recreational use immunity to political subdivisions under the Act, it was acting in an inconsistent manner in allowing injury claims for negligently maintaining property owned by political subdivisions. We do not assume that the legislature is not aware of its prior legislation. As we stated in Syllabus Point 5 of *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986):

> " 'The Legislature, when it enacts legislation, is presumed to know its prior enactments.' Syllabus Point 12, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953)."

 Even if we were to assume that the legislature intended to give political subdivisions the benefit of the Act, then the enactment of the Government Tort Claims and Insurance Reform Act created an inconsistency by permitting suits for the negligent maintenance of real property owned by political subdivisions. In such a situation, we would apply Syllabus Point 2 of *State ex rel. Department of Health and Human Resources, etc. v. West Virginia Public Employees Retirement System,* 183 W.Va. 39, 393 S.E.2d 677 (1990):

> "As a general rule of statutory construction, if several statutory provisions cannot be harmonized, controlling effect must be given to the last enactment of the Legislature."

 For the foregoing reasons, we conclude that W.Va.Code, 19–25–1, *et seq.,* limiting liability of landowners, is not designed to cover real property owned by a county board of education. Consequently, we reverse the summary judgment granted in favor of the

Board and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

---

**17.** These provisions are set out and discussed in     note 5, *supra.*