622 P.2d 234

Mary METHOLA, guardian of the person and estate of Guadalupe Hernandez, an incompetent person, Petitioner,

v.

COUNTY OF EDDY, New Mexico, Leroy Payne, Sheriff, Louie Granger, Simon Martinez, Jose Gutierrez and Alonzo Onsurez, Respondents.

Christopher HOOTON, Petitioner,

v.

CITY OF ALBUQUERQUE, Respondent.

John DOE, Petitioner,

v.

CITY OF ALBUQUERQUE, Respondent.

Nos. 13188, 13227 and 13228.

Supreme Court of New Mexico.

Dec. 31, 1980.

Rehearing Denied Jan. 30, 1981.

Edward E. Triviz and Glenn B. Neumeyer, Las Cruces, for petitioner Methola.

Marron & McKinnon, Dan A. McKinnon III, Albuquerque, for petitioner Hooton.

Ray M. Vargas, Albuquerque, for petitioner Doe.

McCormick & Forbes, Roger E. Yarbro, Carlsbad, Thomas A. Rutledge and Joseph E. Gant, III, Carlslbad, for respondents County of Eddy, Leroy Payne, Sheriff Louie Granger, Simon Martinez, Jose Gutierrez, Alonzo Onsurez.

Pat Bryan, City Atty., Steven Schiff, Asst. City Atty., Keleher & McLeod, Arthur O. Beach, Robert. H. Clark, Phil Krehbiel, Sp. Asst. Attys. Gen., Albuquerque, for respondent City of Albuquerque.

## OPINION

FEDERICI, Justice.

There are three cases on appeal which have been consolidated for determination and opinion by this Court.

### CASE I.

Hernandez was arrested by the Carlsbad City Police on July 1, 1976, and taken to the Eddy County jail. On the night of July 5, he was beaten unconscious by fellow inmates in a loud fight which lasted at least one and a half hours. No jailer came at any time during the fight. He remained unconscious in the cell until the morning of July 7, when the other prisoners requested the jailer to remove him because the stench was bothering them. He remained in a coma for 70 days in the hospital. He suffered irreversible brain damage, totally disabling him. He will require nursing care for the remainder of his life. Methola brought this suit on behalf of Hernandez against the County of Eddy, the County Commissioners, and the sheriff and his deputies.

### CASE II.

Doe was arrested on a felony charge and taken into custody at the Bernalillo County jail, managed by the City of Albuquerque in June of 1977. On the night of September 1, there was a fire in the jail and all of the occupants of his cell and several other cells were placed together in the north tank. Doe and five other Anglos found themselves in a cell with approximately twenty-four Chicanos, a number of whom physically and sexually assaulted him and other Anglos. He yelled for the guards, but did not receive assistance; his voice was then muffled. Early the next morning, he asked the guards to let him see a doctor, his attorney and the jail administrator. He was allowed to see his attorney that afternoon. His attorney arranged to have him moved to another cell. This cell contained six individual cells each with doors and locks. The locks were broken and the doors were not secured in any other manner. Two individuals who had assaulted Doe in the north tank were now in this cell also. He yelled for the guard, but the guard did not respond. From September 2 through September 6, he was repeatedly assaulted physically and sexually by these two individuals. On September 6, Doe was vomiting blood and was carried to the hospital. He subsequently sued the City of Albuquerque.

### CASE III.

Hooton was an 18-year old Anglo arrested on a misdemeanor charge and taken into custody in Bernalillo County on October 9, 1977. He was placed in the north tank, which, at that time, contained primarily Black prisoners. He was harassed and assaulted. After about an hour, one of the Blacks struck him in the jaw, breaking it. When a guard approached, Hooton ran to the door, called out, and was removed from the cell without further incident. He sued the City of Albuquerque.

At trial, the causes of Doe and Hooton were consolidated. In all three cases, the jury returned a verdict in favor of the plaintifffs. Judgment was entered in accordance with the verdicts.

In the *Methola* case, the Court of Appeals reversed the trial court (19 N.M.St.B.Bull. 696 (1980), Judge Sutin dissenting), holding that defendants were immune from suit under the Tort Claims Act (Act), Section 41–4–1 to 41–4–26, N.M.S.A. 1978. The Court of Appeals determined that their holding disposed of all matters raised on appeal, and remanded to the trial court with instructions to vacate its prior judgment and enter judgment for defendants.

In the consolidated cases of Hooton and Doe (19 N.M.St.B.Bull. 775 (1980), Judge Walters dissenting), the Court of Appeals found that the City of Albuquerque was immune from suit, and remanded with directions to the trial court to enter judgment for the City.

Appellants in these cases petitioned this Court for writs of certiorari. We granted the petitions and consolidated the three for determination and opinion. We reverse the Court of Appeals and affirm the respective district courts on the issue of sovereign immunity.

Judicially recognized sovereign immunity was abolished in New Mexico in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975). The Legislature responded by enacting the Tort Claims Act, N.M. Laws 1976, ch. 58 (former Sections 5–14–1 to 5–14–23, N.M. S.A. 1953 (Int.Supp. 1976)). In Section 5–14–2(A) of the Act, the Legislature recognized the "inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." At the same time, it recognized a need to provide for some immunity because "the government should not have the duty to do everything that might be done." *Id.* Under subsection (B), the Legislature abolished all judicially created categories relating to governmental immunity and set forth the applicable standards for the courts when determining liability under the Act. It stated: "Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." *Id.*

The Legislature provided for general immunity from liability under Section 5–14–4(A) and (B), but proceeded to create eight categories of exceptions to that general immunity from liability. Sections 5–14–4 to 5–14–12. Sections 5–14–4 to 5–14–11 create a right of action for "negligence" of public employees while acting within the scope of their employment.

Section 5–14–12 did not use the term "negligence" of public employees while acting within the scope of their employment. That section used the term "caused by." It read:

> [I]mmunity ... does not apply to liability for bodily injury, wrongful death or property damage resulting from assault, battery, ... or deprivation of any right privileges or immunities secured by the Constitution and laws of the United States or New Mexico *when caused by law enforcement officers* while acting within the scope of their duties. (Emphasis added.)

Under Section 5–14–3(C),

> "law enforcement officer" means any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order, or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

These are the laws which were in effect at the time Hernandez was injured. They were amended by the Legislature in 1977. N.M. Laws 1977, ch. 386 (Sections 41–4–1 to 41–4–25, N.M.S.A. 1978). Methola brought suit on Hernandez' behalf after the 1977 amendments were in effect. The 1977 amendments, under Section 41–4–12 removed immunity of law enforcement officers for "*personal injury* ... caused by [them]" also.

The Tort Claims Act is a remedial act which applies only prospectively, in the absence of expressed legislative intent to make it retroactive. *See Southwest Distributing v. Olympia Brewing*, 90 N.M. 502, 565 P.2d 1019 (1977). Since the right to sue

governmental entities and their officials was governed entirely by statute, the applicable statutes are those which were in effect when the suits became pending cases. *See Rodgers v. City of Loving*, 91 N.M. 306, 573 P.2d 240 (Ct.App.1977), and *Rutherford v. Buhler*, 89 N.M. 594, 555 P.2d 715 (Ct. App.1976), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976). All three of the cases here are governed by the provisions of the Act in effect in 1977 and 1978.

The questions before us are:

1. Whether the defendant Eddy County Sheriff, his deputies and the jailers employed by the City of Albuquerque who performed services in or held in custody those plaintiffs incarcerated in the Bernalillo and Eddy county jails are "law enforcement officers," bringing them within the purview of Section 41–4–12; and

2. Whether Section 41–4–12 waives governmental immunity for negligence of these particular law enforcement officers while acting within the scope of their duties.

Section 41–4–12 of the Act applies only if the Eddy County sheriff, his deputies and the involved jailers at the Bernalillo County jail are law enforcement officers under Section 41–4–3(D) (former Section 5–14–3(C), N.M.S.A. 1953 (Int.Supp. 1976)). We must first determine whether their "principal duties under law are to hold in custody any person accused of a criminal offense, [or] to maintain public order."

■ We have previously held that "[a] jailer is an officer in the public domain, charged with the duty to maintain public order." *State v. Rhea*, 94 N.M. 168, 608 P.2d 144 (1980). Their principal duties also include holding accused persons in custody. *See* Section 33–3–1 to 33–3–23, N.M.S.A. 1978. We hold that the Eddy County sheriff, his deputies and the jailers at the Bernalillo County jail were, in this instance, "law enforcement" officers within the meaning of Section 41–4–3(D).

In determining whether the Act allows suits in negligence against law enforcement officers, we are mindful that statutes are to be given effect as written, and where they are free from ambiguity, there is no room for construction. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973). The clear meaning of Section 41–4–4 of the Act, as pertinent here, is that law enforcement officers are not personally liable for malicious or fraudulent torts when committed while acting within the scope of their duties, except as provided in Section 41–4–12. Section 41–4–12, then removes both personal and governmental immunity for personal and bodily injury *when caused by law enforcement officers while acting within the scope of their duties* (although Section 41–4–4(C) requires the governmental entity to defend the officers and pay any settlement or judgment).

The majority of the Court of Appeals' panel reasoned that because immunity was waived for certain *negligent* acts of public employees in Sections 41–4–5 to 41–4–11, and since the word "negligent" is not included in Section 41–4–12, the words "caused by" in Section 41–4–12, modified the statutory scheme and therefore the Legislature meant to exclude the waiver of negligence in Section 41–4–12. Under their reasoning, law enforcement officers and the governmental entity would only be liable for intentional, malicious and fraudulent acts committed by them. We cannot agree with the Court of Appeals' construction of Section 41–4–12, especially when we view it in light of the legislative declaration contained in Section 41–4–2. The entire basis of the Act is premised on traditional concepts of negligence such as "duty" and "the reasonable prudent person's standard of care." Section 41–4–12 does not speak of liability for personal injury or bodily injury resulting from assault or battery when *committed by* law enforcement officers, which is the meaning given to the statute by the Court of Appeals. Instead, the Legislature used the words *"caused by"* law enforcement officers. The words "caused by" do not differ significantly from the usual meaning of proximate cause found in ordinary negligence cases. *Fulginiti v. Tocco*, 462 F.2d 654 (3d Cir. 1972).

■ "Cause" is a term traditionally used in negligence actions in New Mexico. *See e.g., New Mexico State Highway Dept. v. Van Dyke*, 90 N.M. 357, 563 P.2d 1150 (1977). *See also C & H Const. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979), and cases cited therein. It applies to acts of *omission* as well as acts of *commission. See Baca v. Baca*, 81 N.M. 734, 472 P.2d 997 (Ct.App.1970). The Legislature is presumed to know the existing common law. *State ex rel. Bird v. Apodaca*, 91 N.M. 279, 573 P.2d 213 (1977). Under the existing common law, the "cause" of an event contemplates negligent as well as intentional acts.

■ *Webster's Third New International Dictionary Unabridged* at 356 (1976 ed.) defines "cause" as: "a person, thing, fact or condition that brings about an effect or that produces or calls forth a resultant action or state." The definition does not require an affirmative act. "[S]tatutory words are to be used in their ordinary and usual sense unless the contrary is apparent." *State ex rel. Bird v. Apodaca, supra,* at 283, 573 P.2d at 217. We cannot say that it is apparent that the Legislature intended to exclude negligence by using the term "caused by" in Section 41–4–12. Both the common law use of the term and the ordinary and usual meaning of "caused by" include negligent acts of omission as well as commission.

■ Even if the words "caused by" created an ambiguity, we would arrive at the same result. Where there is ambiguity in statutory language and the meaning is not clear, the courts must resort to construction and interpretation. *Keller v. City of Albuquerque, supra.* Any time rules of construction are applied, the overriding concern of the Court is to determine legislative intent. *State ex rel. Newsome v. Alarid,* 90 N.M. 790, 568 P.2d 1236 (1977). In determining legislative intent, we will look primarily to language used, but we must read the several sections together so that all parts are given effect. *Keller v. City of Albuquerque, supra.* This includes amendments to the Act. *Frkovich v. Petranovich,*

48 N.M. 382, 151 P.2d 337 (1944). As noted above, Section 41–4–12 was amended to include liability for "personal injury" caused by law enforcement officers.

We have held that "[w]hen one party is in the custodial care of another, as in the case of a jailed prisoner, the custodian has the duty to exercise reasonable and ordinary care for the protection of the life and health of the person in custody." *City of Belen v. Harrell,* 93 N.M. 601, 603, 603 P.2d 711, 713 (1979). The duty expressed in that case is a common law duty.

Since the Act is in derogation of petitioner's common law rights to sue respondents for negligence, the Act is to be strictly construed insofar as it modifies the common law. *State v. Chavez,* 70 N.M. 289, 373 P.2d 533 (1962). *See Holiday Management Co. v. City of Santa Fe,* 94 N.M. 368, 610 P.2d 1197 (1980). The declared policy of the Act indicates that the Legislature authorized the filing of claims against governmental entities except in situations where the State may not have been able to act for some specific reason, so long as the acts complained of fell within the list set out in the Tort Claims Act.

■ It is appropriate to look to the history and background of the Act when determining legislative intent. *Munroe v. Wall,* 66 N.M. 15, 340 P.2d 1069 (1959). Although the basic concept in the original Act was to create sovereign immunity which had been abolished in *Hicks, supra,* the Act, together with the 1977 amendments, indicates an intent to permit actions against law enforcement officers under the situations presented in these three cases. *See* N.M. Laws 1977, ch. 386. Since the Tort Claims Act is in derogation of the common law, and apparent legislative intent to expand liability of law enforcement officers is shown in the 1977 amendment discussed above, we conclude that the Legislature intended "caused by" in Section 41–4–12 to include those acts enumerated in that section which were caused by the *negligence* of law enforcement officers while acting within the scope of their duties.

In the event a suit is instituted as permitted and limited by Section 41–4–12 of the New Mexico Tort Claims Act, then the established law of negligence and damages shall apply to the claims as well as to all defenses which may be available to the defendants in those suits. The right to sue and any recovery under the New Mexico Tort Claims Act is limited to the rights, procedures, limitations and conditions prescribed in that Act.

We reverse the Court of Appeals and affirm the district courts on the issue of sovereign immunity only and hold that the governmental entities involved here and these law enforcement officers, while acting in the scope of duty, are not immune from suit for personal or bodily injury caused by negligence, in these particular situations. The causes are remanded to the Court of Appeals for disposition of the other issues presented but not disposed of by that court on appeal.

IT IS SO ORDERED.

SOSA, C. J., EASLEY, Senior Justice, and PAYNE and FELTER, JJ., concur.