814 P.2d 117

John E. ORTIZ, Plaintiff–Appellee,

v.

NEW MEXICO STATE POLICE; Gerald E. Anderson, II, individually and in his official capacity; Richard Madrid, individually and in his official capacity; Harold P. Zuni, individually and in his official capacity; Neil Curran, individually and in his official capacity; Joe Tarazon, individually and in his official capacity; Defendants–Appellants,

Robert Seeds, d/b/a Robert Seeds Towing Service, Defendant.

No. 12707.

Court of Appeals of New Mexico.

March 28, 1991.

Certiorari Granted May 2, 1991.

**250**

Mariana G. Geer, Carol J. Ritchie, Felker & Ish, P.A., Santa Fe, for defendants-appellants.

William S. Keller, Richard Rosenstock, Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

We granted this interlocutory appeal to consider whether the New Mexico Tort Claims Act provides immunity to law enforcement officers whose negligent supervision and training of their subordinates proximately causes the commission by those subordinates of the torts of assault, battery, false arrest, and malicious prosecution. We hold that it does not.

## BACKGROUND

This case comes before us on a motion to dismiss for failure to state a claim upon which relief may be granted. SCRA 1986, 1–012(B)(6). Therefore, we "accept as true all facts well pleaded." *Gomez v. Board of Educ.*, 85 N.M. 708, 710, 516 P.2d 679, 681 (1973). The complaint alleges that state police officers falsely arrested plaintiff for careless driving and disorderly conduct, assaulted and battered him in the course of his arrest, and then maliciously prosecuted him. He has sued state police supervisory officers on the theory that their negligent hiring, training, and supervision of their subordinates caused the misconduct.[1] *See Gonzales v. Southwest Sec. & Protection Agency, Inc.*, 100 N.M. 54, 665 P.2d 810 (Ct.App.1983) (claim of negligent supervision and training against employer of security guards). He seeks relief under the New Mexico Tort Claims Act, NMSA 1978, Sections 41–4–1 through –27 (Repl.Pamp. 1989).

## DISCUSSION

The Tort Claims Act provides:

A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by Sections 41–4–5 through 41–4–12[.]

§ 41–4–4(A). The waiver applicable to law enforcement conduct is found in Section 41–4–12, which states:

*The immunity* granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 *does not apply to liability for personal injury*, bodily injury, wrongful death or property damage *resulting from assault, battery, false imprisonment, false arrest, malicious prosecution*, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United

---

1. We refer only to the liability of the supervisors although the state police itself may be responsible under the doctrine of *respondeat superior* for the alleged negligence of supervisory employees.

States or New Mexico when *caused by law enforcement officers while acting within the scope of their duties.* [Emphasis added.]

■ Section 41–4–12 lists several specific torts for which immunity is waived. Defendants rely on the absence from that list of any mention of negligent supervision or training. That reliance is misplaced. Plaintiff alleges that he was injured by four of the listed torts: assault, battery, false arrest, and malicious prosecution. Several decisions by the New Mexico Supreme Court make clear that a law enforcement officer need not personally commit a listed tort for the officer's conduct to come within the waiver of Section 41–4–12. It suffices that the law enforcement officer, while acting within the scope of duty, negligently or intentionally causes the commission of a listed tort by another person.

In *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1980), prisoners in three separate incidents were beaten by fellow inmates. The supreme court decided that the jailers were law enforcement officers who could be held liable to the injured prisoners for failure to comply with their duty to exercise reasonable and ordinary care for the protection of the prisoners. *Methola* rejected the contention that Section 41–4–12 waived immunity only for "personal injury or bodily injury resulting from assault or battery when *committed by* law enforcement officers." *Id.* at 332, 622 P.2d at 237 (emphasis in original). The court wrote, "[W]e conclude that the Legislature intended 'caused by' in Section 41–4–12 to include those acts enumerated in that section which were caused by the negligence of law enforcement officers while acting within the scope of their duties." *Id.* at 333, 622 P.2d at 238 (emphasis omitted).

In *Schear v. Board of County Commissioners*, 101 N.M. 671, 687 P.2d 728 (1984), the supreme court held that the Tort Claims Act waived immunity when a citizen was attacked by a criminal after sheriff's officers negligently failed to respond to an emergency call. The opinion stated that this court had misunderstood *Methola*

when we upheld immunity on the ground that the assault had been committed by a third party. The court wrote, "We again specifically hold that law enforcement officers need not be the *direct cause* of injury (in the sense of having inflicted it) in order for liability to attach." *Id.* at 673, 687 P.2d at 730 (emphasis in original).

Most recently, in *California First Bank v. State*, 111 N.M. 64, 801 P.2d 646 (1990), the supreme court considered liability predicated on a motor vehicle accident caused by an intoxicated driver. The court decided that liability for the accident could be imposed upon law enforcement officers who had wrongfully failed to enforce the liquor-control and drunk-driving laws. Although the opinion relied upon another ground for holding that immunity was waived, it also suggested that immunity would be waived if the intoxicated driver had committed a battery, one of the torts listed in Section 41–4–12. *See id.* at 73–74 n. 6, 801 P.2d at 655–56 n. 6.

■ We recognize that *California First Bank*, in a passage quoted by Judge Bivins' dissent, rejected the proposition that Section 41–4–12 waives immunity for all governmental actors who caused the non-immune act of a law enforcement officer. The comment, however, was made in a discussion of the liability of defendants who were not law enforcement officers. *Id.* at 67–68, 801 P.2d at 649–50. The waiver of immunity provided by Section 41–4–12 specifically relates to law enforcement officers. We are confident that the court did not intend to immunize *law enforcement officers* who caused conduct by other law enforcement officers for which immunity is waived under Section 41–4–12.

*Cross v. City of Clovis*, 107 N.M. 251, 755 P.2d 589 (1988) does not persuade us to the contrary. The issues in that case were traditional tort questions of duty and proximate cause, not the question before us. We doubt that the passage quoted in Judge Bivins' dissent, which states that immunity is waived when law enforcement officers cause *third-party* torts, was suggesting that the third-party tortfeasor must be

someone other than a law enforcement officer.

In short, *Methola* and its progeny hold that immunity is waived when a law enforcement officer causes the commission of certain listed torts by a third person. We find nothing in the reasoning of those opinions or the language of Section 41–4–12 that would enable us to limit those holdings to encompass only occasions when the listed tort was committed by someone other than a law enforcement officer.

Defendants further contend, however, that there is a public policy ground for specifically rejecting the tort of negligent training and supervision under the Tort Claims Act. They argue that the tort should not be recognized because plaintiffs could never increase their recovery in a lawsuit by including such a claim—recovery would always also be possible under a *respondeat superior* theory. Defendants suggest that recognition of liability for negligent supervision and training would serve no function except to enable plaintiffs to obtain otherwise unavailable discovery (such as production of personnel files) and to introduce otherwise inadmissible inflammatory evidence at trial.

We need not determine at this juncture whether we agree that recovery under the tort of negligent training and supervision would be purely duplicative. Even if it would be, we see no bar in the Tort Claims Act to that cause of action. Defendants' concerns about illegitimate discovery and inflammatory evidence at trial can be resolved by rendering discovery and proof unnecessary through concessions on matters such as defenses or liability (*e.g.*, admitting that the supervisors would be liable if the subordinates are found liable) and by bifurcating trial of the underlying claims against the subordinate officers.[2] *See Baum v. Orosco*, 106 N.M. 265, 268–69, 742 P.2d 1, 4–5 (Ct.App.1987) (In Bank) (approving bifurcation); *Armenta v. Churchill*, 42 Cal.2d 448, 267 P.2d 303 (1954) (evidence that is relevant only to negligent entrustment is inadmissible when owner admits agency so that vicarious liability is established);

*Tindall v. Enderle*, 162 Ind.App. 524, 320 N.E.2d 764 (1974) (evidence of negligent hiring not admissible when employer stipulates that employee was acting within scope of employment so that employer is subject to liability under doctrine of *respondeat superior*); *Tuite v. Union Pacific Stages, Inc.*, 204 Or. 565, 284 P.2d 333 (1955) (trial court did not err in failing to submit negligent entrustment claim to jury when employer stipulated to employer-employee relationship). *Cf. Estate of Arrington v. Fields*, 578 S.W.2d 173 (Tex.Ct. App.1979) (stipulation of agency relationship does not moot negligent hiring claim when punitive damages are at issue). Such concessions could also greatly limit, if not eliminate, the expense of having multiple attorneys for numerous named defendants.

We emphasize that our decision in this case is limited to construction of the Tort Claims Act. Although appellants urge this court to provide guidance with respect to the scope and limitations of the tort of negligent training and supervision in this context, the district court did not certify that issue to us and we believe that such matters can better be resolved on a complete record.

CONCLUSION

For the above reasons we affirm the district court's decision that the state Tort Claims Act does not bar the claim against the supervisory defendants for negligent supervision and training.

IT IS SO ORDERED.

MINZNER, J., concurs.

BIVINS, J., dissents.

BIVINS, Judge (dissenting).

I am unable to agree with the majority that Section 41–4–12 of the New Mexico Tort Claims Act (NMSA 1978, Sections 41–4–1 through 41–4–27 (Repl.Pamp.1989)) does not provide immunity to supervisory law enforcement officers whose alleged negligent supervision and training of their subordinates, also law enforcement officers, causes the commission by those sub-

**2.** We do not address the appropriateness of limitations on discovery or proof in this case.

ordinates of enumerated torts which results in personal injury to plaintiff. This holding, in my view, disregards the plain meaning of the statute, the structure of the Act and the teachings of decisions of the supreme court and of this court.

Since this matter comes before us on the denial of a SCRA 1986, 1–012(B)(6) motion, we must accept as true, as the majority states, all facts well pleaded. Plaintiff claims three state police officers, while acting within the scope of their duties, committed the torts of assault and battery on him while making a false arrest, and then maliciously prosecuted him. Plaintiff named the three officers as defendants and claimed waiver of immunity under Section 41–4–12. He also named as defendants the New Mexico State Police Department, the governmental entity which employed the three officers, and the chief of the state police and the district commander, alleging these supervisory officers were responsible for the hiring, training and supervision of the three officers. Count VI of the complaint seeks damages against the supervisory officers based on negligent hiring, training and supervision of the three subordinate officers. Contrary to the majority opinion, plaintiff does not allege that negligent hiring, training and supervision caused the misconduct of the subordinates; rather, he alleges the alleged negligence was the cause of his injuries. While that allegation does not state a claim under Section 41–4–12, I do not quarrel with this technical defect. The claim against the department is based on respondeat superior for the acts or omissions of both the supervisory and subordinate officers. Defendants do not deny the three officers who allegedly committed the enumerated torts were acting within the scope of their duties.

Without repeating the applicable statutes, it would seem clear that Sections 41–4–4(A) and 41–4–12, when read together, mean that a governmental entity and any public employee, while acting within the scope of duty, are granted immunity for any tort, except this immunity does not apply to liability for bodily injury (1) that results from certain enumerated torts, which include the torts alleged by plaintiff; (2) caused by law enforcement officers; (3) while acting within the scope of their duties. We are not concerned here with waiver of immunity for the three subordinate officers. Nor are we concerned that the complaint states a cause of action against the state police, the governmental entity which employed these officers. We are only concerned with whether Section 41–4–12 waives immunity for the chief of the state police and district commander for their alleged negligent hiring, training and supervision of the three subordinate officers. Notwithstanding the absence from Section 41–4–12 of any mention of negligent hiring, supervision or training, the majority concludes that it "suffices that the law enforcement officer, while acting within the scope of duty, negligently or intentionally causes the commission of certain listed torts by *a third person.*" (emphasis added). I would agree with that conclusion if that third person was someone other than a law enforcement officer.

The majority relies on *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1980). Looking for legislative intent, the supreme court in *Methola* interpreted "cause" in Section 41–4–12 to include negligent as well as intentional acts. So interpreted, the court was able to take the next step that law enforcement officers, although not committing the tortious acts, caused it by not exercising their duties of due care for the protection of the inmates.

I do not believe the same statutory interpretation holds for recognizing an alternative and additional cause of action or theory of liability where the actors are law enforcement officers. Why would the legislature intend to provide alternative theories when, through respondeat superior, immunity is waived against the governmental entity? I can glean no such intent.

It is significant that in the other supreme court decisions cited by the majority, the actors committing the enumerated torts were not law enforcement officers. *See Schear v. Board of County Comm'rs*, 101 N.M. 671, 687 P.2d 728 (1984) (sheriff's officers negligently failed to respond to

emergency call from victim tortured and raped by criminal); *California First Bank v. State,* 111 N.M. 64, 801 P.2d 646 (1990) (drunk struck victims after officers negligently failed to enforce liquor control and drunk driving laws).

It is also worth noting that in *Cross v. City of Clovis,* 107 N.M. 251, 252, 755 P.2d 589, 590 (1988) (citing *Methola*), the supreme court said, in discussing Section 41–4–12, "[i]t is clear that the phrase 'when caused by law enforcement officers' includes 'those [third party] acts enumerated in * * * [Section 41–4–12] which were caused by the *negligence* of law enforcement officers while acting within the scope of their duties.'" Does the bracketed phrase "third-party" in that quote refer to the enumerated torts or to the actor who commits them? I would read it to refer to the actor since there would be no reason to qualify the torts. *Cross,* as with the other supreme court decisions discussed above, involved a third-party actor, the driver of a stolen car who crashed through a roadblock.

In analyzing a waiver of immunity, we apply a two-step approach: we determine the legislative intent and then interpret the language of the waiver according to its plain meaning. *Miller v. New Mexico Dept. of Transp.,* 106 N.M. 253, 741 P.2d 1374 (1987). We do not read into the statute language that is not there. *Smith v. Village of Corrales,* 103 N.M. 734, 713 P.2d 4 (Ct.App.1985). I find it difficult to discern a legislative intent to recognize a discrete additional theory of liability when the plain meaning of Section 41–4–12 sets forth the circumstances under which waiver is allowed. The majority has, I believe, read into the statute language which simply is not there.

To be sure, *Methola* determined the statute implied "negligence," a term which is not expressly contained in the section. From that point the majority makes a leap that goes too far. It is one thing to say the legislature could not have intended that law enforcement officers could escape liability when they violate their duties by allowing the objects of their care to suffer

at the hands of third parties, *see Methola; Schear;* it is quite another to say the legislature could not have intended that law enforcement officers, who lose immunity on one clear ground, must also lose it on as many alternative grounds as the fertile mind can conceive as long as it is called negligence. If negligent supervision can be implied under Section 41–4–12, can, for example, negligent entrustment by supervisory employees be implied under NMSA 1978, Section 41–4–5 (waiver for operation or maintenance of motor vehicles)?

Further, negligent hiring, training and supervision is a direct action that is not dependent on respondeat superior. *See Valdez v. Warner,* 106 N.M. 305, 307, 742 P.2d 517, 519 (Ct.App.1987). Section 41–4–12 clearly requires the enumerated torts be committed by law enforcement officers "while acting within the scope of their duties." That language not only is a prerequisite to waive immunity for the law enforcement officers, it attaches liability to the governmental entity through respondeat superior. *See Silva v. State,* 106 N.M. 472, 745 P.2d 380 (1987) (when the act of the employee is the act of the public entity, let the master answer). The majority might counter by saying the governmental entity does answer when a supervisory officer acting within the scope of his duty, negligently hires, trains or supervises another subordinate officer who commits the torts. If we were developing the common law, I would have no difficulty with that argument. We are not; we are interpreting unambiguous statutory language, nothing more.

What the expansive reading of Section 41–4–12 and *Methola* accomplishes is to not only graft on another theory of liability not present in the statute, but also to include additional and unnecessary parties. In discussing waiver, the supreme court in *Silva v. State,* quoted from *Abalos v. Bernalillo County Dist. Attorney's Office,* 105 N.M. 554, 734 P.2d 794 (Ct.App.), *cert. quashed,* 106 N.M. 35, 738 P.2d 907 (1987):

> To name a particular entity in an action under the Tort Claims Act requires two things: (1) a negligent public employee

who meets one of the waiver exceptions under Section 41–4–5 to –12; and (2) an entity that has immediate supervisory responsibilities over the employee. If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the Tort Claims Act. If the city or state directly supervises the employee, then the city or state can be named.

*Silva v. State*, 106 N.M. at 477, 745 P.2d at 385. The *Silva* court interpreted the last sentence of the quote to include "the right of control regardless of whether exercised." *Id.* The point in *Abalos* was to discourage suing up and down the line all conceivable governmental entities. Implicit in that result were economic concerns. The injured party should not have to sue every conceivable governmental entity, and Risk Management should not have to hire separate counsel for each entity named. The injured party can only recover once. *Abalos.*

Similarly, for the same reason we should discourage multiple-laid theories or causes of action for waiver of immunity. It is messy, unnecessary and it confuses the jury.

In *California First Bank v. State* the supreme court said:

> To interpret Section 41–4–12 to extend its waiver of immunity to any and all governmental actors who caused the injury producing conduct of a law enforcement officer would run counter to the structure of the Act that is quite specific with respect to the employee conduct for which the immunity of an employee and his or her agency is waived. Had the Legislature intended to waive immunity for all governmental entities whose conduct concurrently caused the non-immune act of a law enforcement officer, we believe it would have enacted clear provisions to effect that intent.

*Id.* at 68, 801 P.2d at 650.

Paraphrasing the last sentence of that quote, had the legislature intended to waive immunity for law enforcement officers on a theory of direct liability for negligent hiring, training and supervision, I believe it would have enacted clear provisions to effect that intent. It did not, and we should not.

For the above reasons, I respectfully dissent.