899 P.2d 1132

The BOARD OF COUNTY COMMISSION-
ERS OF SAN MIGUEL COUNTY, New
Mexico, and Donald S. Guerin, Ernesto
J. Roybal, Frank Griego, I. Lloyd Herr-
era and Eloy Gonzales, the individual
members thereof, Third–Party Plain-
tiffs–Appellees,

v.

RISK MANAGEMENT DIVISION, Gener-
al Services Department, State of New
Mexico, Third–Party Defendant–Appel-
lant.

No. 21982.

Supreme Court of New Mexico.

July 11, 1995.

Civerolo, Wolf, Gralow & Hill, P.A., Rober-
to C. Armijo, Albuquerque, for appellant.

Jesus L. Lopez, Las Vegas, for appellees.

## OPINION

FROST, Justice.

Third–Party Defendant–Appellant Risk
Management Division (Risk Management)
brings this interlocutory appeal under NMSA
1978, Section 39–3–4 (Repl.Pamp.1991), chal-
lenging the trial court's denial of its motion
for summary judgment. Risk Management
argues that the insurance certificate and en-
dorsements issued to San Miguel County ex-
clude coverage for attorney fees incurred in
defending mandamus claims. Third–Party
Plaintiff–Appellee Board of County Commis-
sioners of San Miguel County (County) ar-
gues that the relevant endorsements which
limit coverage are invalid and that under

both NMSA 1978, Section 15–7–3 (Repl. Pamp.1994), which governs Risk Management's duties, and the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (Repl. Pamp.1989 & Cum.Supp.1994), Risk Management is required to reimburse the County for any attorney fees for which it may be liable in the underlying action. We reverse.

## I. FACTS

Risk Management is the governmental agency charged with administering the public liability fund and providing insurance coverage for state and municipal governing entities and employees. San Miguel County has participated in Risk Management's public liability fund since 1979. Risk Management first issued its Certificate of Coverage for San Miguel County in 1979 and since then has issued numerous endorsements adjusting and clarifying coverage. On January 1, 1990, Risk Management issued Endorsement 14 which provides in relevant part, "Coverage under this Certificate does not include any payment for costs and expenses of defense ... resulting from any dispute [based on a claim for mandamus relief]." The Certificate and related endorsements were not adopted under the rulemaking procedure delineated in NMSA 1978, Section 9–6–5(E) (Repl. Pamp.1994) (requiring notice and hearing for rules created by the department of finance and administration). Section 15–7–3(A) (Repl.Pamp.1994), refers to Section 9–6–5(E) as setting out the proper procedures for promulgating an administrative rule.

In 1993 the County filed a petition for writ of mandamus against the county sheriff. The sheriff filed a counterclaim asserting that the County was liable for his attorney fees in defending the action. The County then filed a third-party complaint against Risk Management seeking a declaratory judgment that Risk Management should be held liable for any attorney fees the County may be required to pay in connection with the mandamus action. Risk Management moved for summary judgment based on the fact that its coverage expressly excluded attorney fees in a mandamus action. The County admitted that Endorsement 14 expressly excluded coverage for mandamus ac-

tions but argued that the endorsement denying coverage amounted to an improperly promulgated rule and was therefore invalid. The trial court denied the summary judgment motion and Risk Management brought this interlocutory appeal.

## II. DISCUSSION

■ "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). If the facts are undisputed and only a legal interpretation of the facts remains, summary judgment is the appropriate remedy. *Tabet Lumber Co. v. Romero,* 117 N.M. 429, 431–32, 872 P.2d 847, 849–50 (1994).

### A. Arguments Raised by the Parties

In the present case, the facts are undisputed. Risk Management concedes that, in promulgating Endorsement 14, it did not follow the rule-making procedures delineated in Section 9–6–5(E), which require notice and hearing. Indeed, Risk Management acknowledged in deposition that it has never followed formal rulemaking procedures for any of the certificates or endorsements it has issued to governmental entities. The County, in turn, concedes that under the express terms of the relevant endorsements, it is not entitled to reimbursement of attorney fees for mandamus actions. The only issue before us is whether Risk Management's denial of coverage for mandamus actions was properly promulgated under Section 15–7–3, which governs Risk Management's responsibilities.

Section 15–7–3(A) provides in relevant part,

The risk management division of the general services department may:

. . . .

(6) in the manner prescribed by Subsection E of Section 9–6–5 NMSA 1978, prescribe by rule or regulation the rating bases, assessments, penalties and risks to be covered by the public liability fund, the workers' compensation retention fund and

the public property reserve fund, and the extent such risks are to be covered;

(7) issue certificates of coverage in accordance with Paragraph (6) of this subsection:

(a) to any governmental entity for any tort liability risk covered by the public liability fund;

(b) to any governmental entity for any personal injury liability risk or for the defense of any errors or act or omission or neglect or breach of duty, including the risks set forth in Paragraph (2) of Subsection B and Paragraph (2) of Subsection D of Section 41–4–4 NMSA 1978; and

(c) to any governmental entity for any part of risk covered by the workers' compensation retention fund, the surety bond fund or the public property reserve fund;

. . . .

Section 9–6–5(E) provides in relevant part:

Unless otherwise provided by statute, no regulation affecting any person or agency outside the department shall be adopted, amended or repealed without a public hearing on the proposed action before the secretary or a hearing officer designated by him. . . . Notice of the subject matter of the regulation, the action proposed to be taken, the time and place of the hearing, the manner in which interested persons may present their views and the method by which copies of the proposed regulation, proposed amendment or repeal of an existing regulation may be obtained shall be published. . . .

Risk Management argues that compliance with these rulemaking procedures is discretionary. It points out that the express language of Section 15–7–3 provides that Risk Management "may" issue certificates in the manner prescribed by Section 9–6–5(E). Risk Management therefore argues that it has the discretion to either promulgate rules regarding certificates and endorsements in accordance with Section 9–6–5(E) or informally issue certificates and endorsements as it has done for the County's coverage.

The County counters that the changes in the scope of coverage contained in the endorsements amounts to administrative rule-making which must comply with the procedures set out in Section 9–6–5(E). It contends that since Risk Management failed to comply with the applicable notice and hearing requirements, the denial of coverage for mandamus actions contained in Endorsement 14 was invalid.

In the present case, however, we are not actually confronted with this conflict of interpretation. Section 15–7–3, the statute that controls Risk Management's duties and which refers to Section 9–6–5(E), is in turn governed by the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (Repl.Pamp.1989 & Cum.Supp.1994). The Tort Claims Act, however, does not include coverage for mandamus actions. Therefore, Risk Management's denial of coverage for mandamus actions in Endorsement 14 was a ministerial act, fulfilling the requirements of the Tort Claims Act, and not a discretionary decision altering the scope of the County's coverage. Accordingly, the refusal to cover mandamus claims in Endorsement 14 was not subject to rulemaking requirements regardless of the proper interpretation of the procedural requirements in Section 15–7–3.

B. The Tort Claims Act

■ The Tort Claims Act was enacted in response to the judicial abrogation of sovereign immunity in *Hicks v. State,* 88 N.M. 588, 592, 544 P.2d 1153, 1157 (1975). The basic intent of the Act was to reestablish governmental immunity, while creating specific exceptions for which the government could be sued for tort liability. *Methola v. County of Eddy,* 95 N.M. 329, 331, 622 P.2d 234, 236 (1980). Accordingly, Section 41–4–4 provides for tort immunity for governmental entities and public employees acting within the scope of their duties, with specific activities excepted from immunity set out in Sections 41–4–5 through 41–4–12. In addition to defining the scope of governmental immunity, the Act requires that:

[A] governmental entity shall provide a defense, including costs and attorneys' fees, for any public employee when liability is sought for:

(1) any tort alleged to have been committed by the public employee while acting within the scope of his duty; or

(2) any violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico when alleged to have been committed by the public employee while acting within the scope of his duty.

Section 41-4-4(B). The legislature then enacted Section 15-7-3(A)(7) which made Risk Management responsible for covering a public employee's attorney fees as required by Section 41-4-4(B).

■ The County argues that Section 41-4-4(B) includes mandamus actions in the class of actions for which a defense must be provided. It therefore contends that Risk Management is required to pay defense costs for the County's mandamus action against the sheriff under Section 15-7-3(A)(7). However, the County misconstrues the nature of mandamus actions.

■ Traditionally, mandamus actions could be brought against governmental officials requiring them to perform their statutory duty regardless of whether the government enjoyed sovereign immunity because such actions were not actions against the state. 52 Am.Jur.2d *Mandamus* § 129 (1970) ("[T]he immunity of the sovereign to suit cannot be invoked to defeat the mandamus to compel performance by the officer of duties imposed upon him by law." (footnote omitted)); *see also State ex rel. Castillo Corp. v. New Mexico State Tax Comm'n,* 79 N.M. 357, 359, 443 P.2d 850, 852 (1968) (mandamus proceeding requires performance of a plainly required duty and "is not a suit against the State"); *Plastic Surgery Assocs. v. Ratchford,* 7 Ohio App.3d 118, 454 N.E.2d 567, 572 (1982) ("Prior to the consent of the state itself to be sued, it was generally recognized that state officers and agencies were subject to actions in ... mandamus ... so long as direct relief was not sought against the state but, instead, the remedy sought was to compel the officer or agency to perform a duty enjoined by law."). Thus, the judicial abrogation of sovereign immunity and the subsequent legislative revival of the doctrine

under the Tort Claims Act was not directed at and had no impact on mandamus actions brought against state officers for failure to perform a duty required by law.

This fact is made clear by Section 41-4-17, the provision making the Act the exclusive remedy for any action for damages against the government. Section 41-4-17 provides in relevant part, "Nothing in this section shall be construed to prohibit any proceedings for *mandamus,* prohibition, habeas corpus, certiorari, injunction or quo warranto." *Id.* (emphasis added). Accordingly, the legislature expressed its intent that the Tort Claims Act not interfere with the traditional right to bring a mandamus action against a government official for failure to perform a required duty.

Instead, the Act was directed at limiting claims for *damages* brought against the state or state employees acting within the scope of their duty. As we noted in *Methola,* it is plain that "[t]he entire basis of the Act is premised on traditional concepts of negligence such as 'duty' and 'the reasonable [sic] prudent person's standard of care.' " *Methola,* 95 N.M. at 332, 622 P.2d at 237 (examining whether Section 41-4-12 waived immunity for negligence claims). We further stated that "the established law of negligence and *damages* shall apply to [claims brought under the Act]." *Id.* at 334, 622 P.2d at 239 (emphasis added). In addition, we note that the exceptions to general immunity, Sections 41-4-5 through -11 of the Act, explicitly state that the general immunity granted by Section 41-4-4 does not apply to "*liability for damages*" for the listed acts.

The County argues that Section 41-4-4(B) should be read as requiring Risk Management to provide for the defense of mandamus actions against state officials. It relies on the language in *Methola* quoted above, stating that "the Act is premised on traditional concepts of negligence such as 'duty.' " *Methola,* 95 N.M. at 332, 622 P.2d at 237. The County notes that the mandamus action against the sheriff was based on the sheriff's refusal to perform his duty. It therefore contends that because this mandamus action

was instituted to enforce a statutory "duty," it is covered by the Act.

We decline to adopt the County's strained interpretation of the Tort Claims Act. We noted in *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988), that we must "read the act in its entirety and construe each part in connection with every other part to produce a harmonious whole." In addition, in *Methola* we held that because the Act is in derogation of one's common law right to sue, it should be strictly construed. *Methola*, 95 N.M. at 333, 622 P.2d at 238. As discussed above, reading the Act as a whole and in the proper historical context demonstrates that the legislature intended the Act to apply to claims for damages. Mandamus actions, such as the one at issue here, were not originally barred by sovereign immunity, and we find the legislature did not intend to include them in the provisions of the Tort Claims Act. Accordingly, Section 41–4–4(B), which requires that the government provide a defense for employees subject to a claim for liability, does not include providing a defense for mandamus actions.

### C. Risk Management Division

■ In addition to statutorily reestablishing governmental immunity with enumerated exceptions, the Tort Claims Act also provides for creation of a public liability fund to be overseen by Risk Management. Sections 41–4–23 to –25. Under Section 41–4–25(A), local governing bodies are required to "obtain coverage for all risks for which immunity has been waived under the Tort Claims Act ... pursuant to Sections 41–4–9, 41–4–10 and 41–4–12 ... through the public liability fund." In addition, under certain circumstances, local public bodies can apply to Risk Management in order to obtain coverage for any other risk "for which immunity has been waived under the Tort Claims Act." Section 41–4–25. Accordingly, the public liability fund is only set up to cover risks delineated in the Tort Claims Act.

Risk Management is charged with overseeing the public liability fund, as well as other reserve funds, and for providing for the terms of coverage for any liability to which state agencies may be exposed under the Tort Claims Act. Sections 15–7–2 to –3; Sections 41–4–23 to –25. As part of its duties under Section 15–7–3(A)(7)(b), Risk Management is charged with covering the costs for defending governmental entities as required under Section 41–4–4(B).

Section 15–7–3(A)(7)(b) specifically provides that Risk Management may issue certificates of coverage "to any governmental entity for any personal injury liability risk or for the defense of any errors or act or omission or neglect or breach of duty, including the risks set forth in [Sections 41–4–4(B)(2) and (D)(2) ]." The County suggests that the phrase any "neglect or breach of duty" includes mandamus actions brought for failure to perform a legal duty. However, such an interpretation does not comport with the other sections laying out Risk Management's responsibilities or with the Tort Claims Act.

As discussed above, the Tort Claims Act deals with liability for claims for damages. The requirement that the government provide a defense for public employees who face claims brought under the Act does not extend to mandamus actions. The legislature created Risk Management to oversee insurance coverage for governmental liability generated by the Tort Claims Act and to administer the public liability fund. Accordingly, in order to ensure that the Tort Claims Act and the statutes defining Risk Management's duties "produce a harmonious whole," *Klineline*, 106 N.M. at 735, 749 P.2d at 1114, we read Section 15–7–3(A)(7)(b), discussing coverage by Risk Management for the defense of governmental entities, as being limited to the coverage required by the Tort Claims Act and as not extending to mandamus actions. *See also Methola*, 95 N.M. at 333, 622 P.2d at 238 (noting that all sections of the Tort Claims Act must be read together to determine legislative intent).

### D. Denial of Mandamus Coverage

■ Because Section 15–7–3 does not extend to providing coverage for the defense of a mandamus action, Risk Management did not have the statutory authority or discretion to extend coverage to such an action. Accordingly, Risk Management's denial of cov-

erage for mandamus claims was nothing more than a ministerial act. *See* 2 Am. Jur.2d *Administrative Law* § 65 (1994) (noting that a ministerial duty is a simple, definite duty imposed by law that is not dependent upon an officer's judgment or discretion); *see also El Dorado at Santa Fe, Inc. v. Board of County Comm'rs,* 89 N.M. 313, 316–17, 551 P.2d 1360, 1363–64 (1976) (noting ministerial act is an act that an official is required to perform regardless of his or her opinion as to its propriety). As such, Risk Management's denial of coverage for mandamus claims did not amount to promulgation of a rule which, according to the County, would require following the procedures set out in Section 9–6–5(E). *Cf. Mapleton Community Home, Inc. v. Minnesota Dep't of Human Servs.,* 391 N.W.2d 798, 801 (Minn. 1986) ("If an agency's interpretation corresponds with the plain meaning of the rule it construes, the agency is not deemed to have promulgated a new rule."); *Sentara–Hampton Gen. Hosp. v. Sullivan,* 980 F.2d 749, 759 (D.C.Cir.1992) (noting that interpretive rules, which only remind parties of existing duties, are not subject to notice and comment under Federal Administrative Procedures Act). Indeed, "[a]n administrative agency has no power to create a rule or regulation that is not in harmony with its statutory authority." *New Mexico Bd. of Pharmacy v. New Mexico Bd. of Osteopathic Medical Examiners,* 95 N.M. 780, 782, 626 P.2d 854, 856 (Ct.App. 1981). Therefore, we reject the County's argument that the denial of coverage for mandamus claims contained in Endorsement 14 is invalid as an improperly promulgated administrative rule.

We note that because Risk Management's actions did not amount to rulemaking, we are not confronted with the issue raised by the County that any discretionary decision regarding the scope of coverage made by Risk Management under Sections 15–7–3(A)(6) and –3(A)(7) must comply with the rulemaking procedure set out in Section 9–6–5(E). However, given the potential ambiguity of the statute and the large number of certificates and endorsements that could be affected, the legislature may wish to consider addressing this matter.

## III. CONCLUSION

We find that, as a matter of law, the County is not entitled to reimbursement from Risk Management for any attorney fees incurred by the sheriff in defending the underlying mandamus action. Accordingly, we reverse the trial court's order denying Risk Management's motion for summary judgment and remand this case to the trial court for entry of summary judgment in favor of Risk Management.

**IT IS SO ORDERED.**

BACA, C.J., and RANSOM, J., concur.