2008-NMCA-151

194 P.3d 766

Linda MARTIN, Plaintiff–Appellant,

v.

**MIDDLE RIO GRANDE CONSER-
VANCY DISTRICT, Defen-
dant–Appellee.**

No. 28,051.

Court of Appeals of New Mexico.

Sept. 11, 2008.

Sutin, Thayer & Browne, Ronald Segel, Albuquerque, NM, for Appellant.

French & Associates, P.C., Stephen G. French, Kerri L. Allensworth, Albuquerque, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} In this case we decide whether the recreational use provision of the Off–Highway Motor Vehicle Act, NMSA 1978, § 66–3–1013(A) (2005) (OHMVA), which limits landowner liability for damages arising out of off-highway motor vehicle-related accidents or injuries occurring on the landowner's lands, applies to government landowners as well as private landowners. Having considered the OHMVA in its historical context, we hold that the legislature intended the OHMVA to apply solely to private landowners, and we reverse the district court's order of dismissal.

## BACKGROUND

{2} The following facts are not disputed by the parties. Appellant, Linda Martin (Martin), was driving a recreational vehicle on land owned or controlled by Appellee, Middle Rio Grande Conservancy District (Middle Rio Grande). She was seriously injured when the vehicle ran into an unmarked hazard. Martin alleged that she was a visitor and that Middle Rio Grande breached its duty to use ordinary care to keep the land safe for visitors' use. She alleged in the alternative that she was a trespasser and that Middle Rio Grande breached its duty to use ordinary care to warn trespassers of a dangerous condition on the land. Middle Rio Grande sought immunity under the OHMVA. The district court granted Middle Rio Grande's motion to dismiss without prejudice, permitting Martin to amend her complaint, but certified for interlocutory appeal the question of whether the OHMVA confers immunity on governmental entities such as Middle Rio Grande.

## DISCUSSION

### Standard of Review

{3} The issue before us is one of statutory interpretation, which is a question of law we review de novo. *N.M. Bd. of Veterinary Med. v. Riegger,* 2007–NMSC–044, ¶ 11, 142 N.M. 248, 164 P.3d 947.

### The Plain Meaning Rule

Subsection (A) of the OHMVA reads as follows:

A landowner shall not be held liable for damages arising out of off-highway motor vehicle-related accidents or injuries occurring on the landowner's lands in which the landowner is not directly involved unless the entry on the lands is subject to payment of a fee.

Section 66–3–1013(A).

{4} As did the defendant in *Lucero v. Richardson & Richardson, Inc.*, 2002–NMCA–013, ¶¶ 3–17, 131 N.M. 522, 39 P.3d 739, Middle Rio Grande in our case argues for a plain meaning analysis of the statutory language. Middle Rio Grande contends that the statute makes sense as written and that we should not read language into the statute that is not there. However, this Court has previously called into question this proposition in the context of a related and similarly drafted New Mexico recreational use statute, and today we decline to apply the plain meaning rule to the OHMVA. In *Lucero*, 2002–NMCA–013, ¶¶ 3–17, 131 N.M. 522, 39 P.3d 739, we devoted extensive dicta to a discussion of whether the legislature intended our Recreational Use Statute, NMSA 1978, § 17–4–7(A) (1967) (RUS), which is a companion statute to the OHMVA, to apply to public as well as private landowners. We noted that the RUS, which limits the liability of "[a]ny owner, lessee or person in control of lands" without reservation, is unclear as to whether it applies to state lands. *Lucero*, 2002–NMCA–013, ¶¶ 8–12, 131 N.M. 522, 39 P.3d 739. We stated that "[t]o decide this issue, we would need to determine whether . . . we should apply a strict plain meaning analysis, or whether we should look beyond the words of the statute and consider the intent of the legislature that passed it." *Id.* ¶ 8. Then, citing our Supreme Court's exhortation in *State v. Cleve*, 1999–NMSC–017, ¶ 8, 127 N.M. 240, 980 P.2d 23, to "exercise caution in applying the plain meaning rule," lest we fall victim to its "beguiling simplicity," we embarked on an exhaustive discussion of the many tools available to us to resolve the "legitimate difference of opinion as to whether the phrase 'any owner' should be con-

strued to include government entities when the statute would not have applied to public lands at the time it was passed." *Lucero*, 2002–NMCA–013, ¶¶ 8–12, 131 N.M. 522, 39 P.3d 739. We reached no conclusion on the issue, and we decided the case on a different ground. *Id.* ¶ 17. Nonetheless, we find the plain meaning rule no more useful in this case than it was in *Lucero.*

{5} Martin, on the other hand, urges us to examine the context in which the OHMVA was passed and fill the gap in our statutory scheme that we pointed out in *Lucero.* We stated in *Lucero* that although the "tools of statutory interpretation provide some guidance, there is no overwhelming evidence as to whether or not the statute was meant to extend to publicly held land," and we invited the legislature to "amend the [RUS] to demonstrate its true intent." *Id.* ¶ 12. Absent legislative action in the six years since *Lucero,* and lacking any other available ground upon which to decide the instant case, we rely today on a number of the interpretive tools we laid out in *Lucero.* Having considered (1) the legislative history of the statute, (2) the historical context in which it was passed, (3) the interplay between the OHMVA and our Tort Claims Act, and (4) the canon of construction that statutes in derogation of the common law right to sue are to be strictly construed, we hold that the OHMVA does not confer recreational usage immunity on public landowners.

### Legislative History

{6} Both the OHMVA and the RUS, which we examine in pari materia in this opinion and refer to collectively as our "recreational use statutes," were adopted from a model statute drafted in 1965 by the Council of State Governments that proposed limits on the liability of landowners who allowed the public to use their land without paying a fee. *See Public Recreation on Private Lands: Limitations on Liability,* 24 Suggested State Legislation 150 (1965) (Model Statute). As we discussed in *Lucero,* although the commentary to the Model Statute "makes it clear that the drafters were focusing on private land," the Model Statute itself "provides immunity for 'owners of land' without any ex-

press limitation to private, as opposed to public, landowners." *Lucero,* 2002–NMCA–013, ¶¶ 5–6, 131 N.M. 522, 39 P.3d 739.

{7} Regardless, the Model Statute seems to have been drafted with private landowners in mind. The objective of the Model Act can be gleaned not only from its title, which speaks explicitly of "private lands," but also from the following introductory commentary that we quoted in *Lucero:*

> Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of *private land* could add to the outdoor recreation resources available.... [I]n those instances where *private owners* are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.
>
> . . .
>
> The suggested act which follows is designed to encourage availability of *private lands* by limiting the liability of owners to situations in which they are compensated for the use of their property....

2002–NMCA–013, ¶ 5, 131 N.M. 522, 39 P.3d 739 (alteration in original) (emphasis added) (internal quotation marks and citation omitted). Moreover, this Court has previously observed that "[o]ur off-highway motor vehicle statute follows, in part, the approach taken by the [Model Statute,] which limits *private landowner* liability from off-highway recreational motor vehicle accidents." *Matthews v. State,* 113 N.M. 291, 294, 825 P.2d 224, 227 (Ct.App.1991) (emphasis added).

{8} Other jurisdictions have cited to the Model Statute and its commentary in reasoning that their recreational use statutes were intended to apply only to private landowners and not to governmental entities. Our holding today is in accord with these cases, each of which involves the construction of a recreational use statute that does not set forth whether the "owners," "owners of land," or "landowners" upon which immunity is conferred include public entities. *Conway v. Town of Wilton,* 238 Conn. 653, 680 A.2d 242, 249–50, 256 (1996) (overruling prior decision holding that "owner" under recreational use statute included municipalities and concluding that definition of "owner," which was identical to that in Model Statute, was ambiguous when court considered legislative history and public policy underlying statute); *Monteville v. Terrebonne Parish Consol. Gov't,* 567 So.2d 1097, 1101–02 (La.1990) (noting that the legislature had adopted the Model Statute almost without change, including the definition of "owner," and concluding that act applied only to private owners); *Bronsen v. Dawes County,* 272 Neb. 320, 722 N.W.2d 17, 29 (2006) (overruling precedent and holding that recreational use statute that on its face applied simply to "owners of land" was intended to confer immunity only to private landowners and not to governmental entities); *Stamper v. Kanawha County Bd. of Educ.,* 191 W.Va. 297, 445 S.E.2d 238, 240–42 (1994) (concluding that recreational use statute fashioned after the Model Statute was intended to benefit private landowners); *see Estate of Gordon–Couture v. Brown,* 152 N.H. 265, 876 A.2d 196, 203 (2005) (noting that the purpose of the Model Statute is to encourage private landowners to make their land available for public recreational uses).

## Historical Context

{9} As we noted in *Lucero,* our recreational use statutes were adopted at a time when sovereign immunity protected governmental bodies from tort liability. *Lucero,* 2002–NMCA–013, ¶ 7, 131 N.M. 522, 39 P.3d 739. The OHMVA was enacted on April 9, 1975, several months before our Supreme Court abolished common law sovereign immunity in *Hicks v. State,* 88 N.M. 588, 592, 544 P.2d 1153, 1157 (1975), and prior to the enactment of the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 2007). *See* 1975 N.M. Laws ch. 240, § 13. Therefore, because government entities enjoyed common law sovereign immunity at the time the OHMVA was enacted, the legislature could not have intended to grant recreational use immunity to public landowners when it drafted the OHMVA.

{10} We thus adopt the reasoning of several other jurisdictions that have examined their recreational use statutes in the same historical light. For example, a Pennsylvania court wrote:

It seems safe to assume that the legislature, when limiting the liability of landowners, believed the state immune from suit. Consequently, one must seriously question whether the legislature intended to confer upon the Commonwealth a redundant immunity. It is axiomatic that the courts, when construing statutory language, must presume that the legislature did not intend an absurd result or intend to perform a useless act when enacting the statute.... At best then, to ascribe to the legislature an intent to include the Commonwealth as an "owner of land" in the Recreation Use of Land and Water Act so that the completely immune Commonwealth would enjoy an additional limited immunity would result in the enactment being either surplusage or reaching an absurd result.... Thus, it would appear that the statute does not apply to the Commonwealth.

*Hahn v. Commonwealth,* 18 Pa. D. & C.3d 260, 269–70 (1980) (internal quotation marks and citations omitted); *see Bronsen,* 722 N.W.2d at 25 (reasoning that legislature had no reason to believe that government entities were in need of liability protection when recreational use statute was adopted because such entities were already protected by sovereign immunity); *Ballard v. Ypsilanti Twp.,* 457 Mich. 564, 577 N.W.2d 890, 896–97 (1998) (noting that state was already immune from liability when recreational land use act was passed, "so the Legislature would have no reason to grant the state a second layer of immunity"); *Stamper,* 445 S.E.2d at 242 (reasoning that because state and local governments possessed sovereign immunity, "it is difficult to conceive that the legislature intended to extend additional land use immunity to these bodies").

**Interplay Between the OHMVA and the New Mexico Tort Claims Act**

{11} Furthermore, we agree with Martin's argument that extending to public landowners the immunity conferred by the New Mexico recreational use statutes would conflict with the New Mexico Tort Claims Act and would create an absurd result that the legislature could not have intended. Extending the immunity of the OHMVA to public bodies would frustrate the purpose of the Tort Claims Act by reinstating governmental immunity in situations in which the Tort Claims Act has waived that immunity. Allowing a public body to assert the defense of the recreational use statute would preempt the Tort Claims Act's waivers of immunity and completely immunize all public entities from liability for harm resulting from recreational use of their public lands, so long as no usage fee was charged. Allowing an injured party to sue a public landowner, but only when that landowner charged a usage fee, would be an absurd result that the legislature could not have intended when it specifically enacted certain waivers of immunity. When a reading of a statute leads to a result that is absurd or that defeats the intended object of the legislature, we will construe the statute to avoid such a result. *See Compton v. Lytle,* 2003–NMSC–031, ¶ 20, 134 N.M. 586, 81 P.3d 39.

{12} Moreover, as we noted in *Lucero,* when two statutes conflict, "the most recent expression of legislative intent[ ] will control over an earlier statute to the extent of any inconsistency." *Abbott v. Armijo,* 100 N.M. 190, 191, 668 P.2d 306, 307 (1983); *see Lucero,* 2002–NMCA–013, ¶ 14, 131 N.M. 522, 39 P.3d 739. As "the most recent expression of legislative intent as to the extent of governmental liability," the Tort Claims Act preempts claims of governmental immunity under the OHMVA. *Id.,* 2002–NMCA–013, ¶ 14, 131 N.M. 522, 39 P.3d 739; *see City of Dallas v. Mitchell,* 870 S.W.2d 21, 23 (Tex.1994) (holding that recreational use statute does not apply to governmental entities because standard of care owed to recreational users on government property is specified in Texas Tort Claims Act); *Cox v. Cmty. Servs. Dep't,* 543 So.2d 297, 298 (Fla.Dist.Ct. App.1989) (holding that Tort Claims Act, not recreational use statute, applies to municipalities).

{13} Middle Rio Grande argues that any ambiguity in the OHMVA should be resolved in its favor because Section 41–4–14 of the

Tort Claims Act provides that "[a] governmental entity and its public employees may assert *any defense* available under the law of New Mexico." *Id.* (emphasis added). Middle Rio Grande contends that the OHMVA is one such defense, thus resolving any perceived conflict between the two statutes. We have, however, previously addressed this argument, and we restate the following dicta from *Lucero* in support of our holding today:

> Under such a construction ... municipal governments across the state would be immune from liability for injuries occurring in any park open to the public free of charge, even though the Tort Claims Act expressly waives immunity for public parks. Tort victims would only have the right to sue public entities for injuries occurring in public parks when there is a fee for admission. It would be unusual for our legislature to have taken such an indirect and underhanded route to avoid liability when it had the more direct and obvious option of maintaining its immunity for public parks ... within the Tort Claims Act.

*Lucero*, 2002–NMCA–013, ¶ 13, 131 N.M. 522, 39 P.3d 739; *see Borgen v. Fort Pitt Museum Assocs.*, 83 Pa.Cmwlth. 207, 477 A.2d 36, 39 (1984) ("It is ... unlikely that the Legislature, had it desired to confer immunity ... would do so by such an imprecise, indefinite[,] and indistinct vehicle as a statute limiting the liability of the 'owners of land.'"). As we suggested in *Lucero*, we find Martin's argument that the Tort Claims Act preempts the application of the recreational use statutes more compelling than Middle Rio Grande's argument that the "any defense" provision in the Tort Claims Act resolves the conflict between the statutes. *See Lucero*, 2002–NMCA–013, ¶ 14, 131 N.M. 522, 39 P.3d 739.

### The OHMVA is a Statute in Derogation of the Common Law Right to Sue

{14} The OHMVA is a statute in derogation of the common law because it strips from a class of plaintiffs, namely recreational users who have not paid a fee, the right to recover damages caused by negligence. Although we declined in *Lucero* to apply any of the canons of statutory construction we discussed in that opinion, we acknowledged that statutes in derogation of the common law, limiting the common law right of tort victims to seek compensation from tortfeasors, are to be narrowly construed. *Id.* ¶ 10. Our Supreme Court has repeatedly applied this canon in the context of the Tort Claims Act, *Bd. of County Comm'rs v. Risk Mgmt. Div.*, 120 N.M. 178, 182, 899 P.2d 1132, 1136 (1995); *Wells v. County of Valencia*, 98 N.M. 3, 6, 644 P.2d 517, 520 (1982); *Methola v. County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980), and today we believe it to be particularly compelling in the context of the OHMVA. In light of the legislative history and historical context of the OHMVA discussed above, we therefore construe the statute against a broad conferral of immunity to public landowners. In so doing, we note that other jurisdictions have applied this canon in limiting the scope of immunity under their recreational use statutes to private landowners. *See, e.g., Monteville*, 567 So.2d at 1100; *Conway*, 680 A.2d at 252 n. 10, 254; *Goodson v. City of Racine*, 61 Wis.2d 554, 213 N.W.2d 16, 18–19 (1973).

### CONCLUSION

{15} We reverse the district court's grant of Middle Rio Grande's motion to dismiss and remand for further proceedings consistent with this opinion.

{16} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and RODERICK T. KENNEDY, Judges.