This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CITY OF ESPANOLA,**

    Plaintiff-Appellee,

v.                               **No. 28,620**

**CHRISTOBAL ARCHULETA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Timothy L. Garcia, District Judge**

Angela Rosalina Pacheco, City Attorney
Espanola, NM

for Appellee

Steven G. Farber
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

Frustrated with repeated acts of vandalism perpetrated against his automotive dealership, located in Espanola, New Mexico, Defendant-Appellant Christobal

Archuleta decided to arm himself and stand guard at the lot to prevent further depredations. Earlier in the day, he'd talked to Sergeant Griego of the Espanola Police Department and told him that he would be standing guard. Sergeant Griego then gave this information to fellow officer Corporal Wright, who was working the graveyard shift that evening. As promised, Archuleta went to his lot just after ten in the evening that night, November 11, 2006, armed with a shotgun.

About 4 a.m., Espanola police officers, including Corporal Wright, were dispatched to the car lot on a call involving a person with a gun. Upon arrival, they encountered Archuleta, armed with a shotgun and dressed in a dark, hooded sweatshirt. The officers, unaware of Archuleta's identity, got out of their cars with guns drawn, and demanded Archuleta put his weapon down, and get on the ground. Archuleta was slow to do so, but after a short time, he placed the shotgun on the hood of a truck next to him. He then reached into his sweatshirt, retrieved a mobile phone, and proceeded to place a call. He did not comply with several other demands to put down the phone and get on the ground. A few seconds later, one police officer came up to the truck and removed the shotgun from the hood without any reaction from Archuleta, who continued to talk on the telephone. The officer who had taken the gun then returned, and took Archuleta by the arm, and began to lead him away. Corporal

2

Wright then approached, holstering his own weapon, and took Archuleta's other arm. Within seconds, the first officer executed a "take down" move, tripping Archuleta to the ground. This maneuver also inadvertently tripped Corporal Wright, who likewise fell down in the tangle. Officers then forcibly subdued Archuleta, pepper-sprayed him in the face, handcuffed, and arrested him.

Corporal Wright testified that at no time did Archuleta point the shotgun at anyone, and that he had been told that someone would be present that night at Archuleta's car lot, but that it was not mentioned that anyone would be armed.

Archuleta was convicted in municipal court and appealed to the district court for an appeal de novo. The district court convicted him of violating Espanola Municipal Ordinance Section 70-211(a)(4), which proscribes "[r]esisting or abusing any . . . peace officer in the lawful discharge of his duties." Defendant now raises a variety of arguments for reversal, but owing mostly to the specificity with which the district court convicted him under that particular ordinance subsection, we hold that his conviction was not supported by substantial evidence. Under the statutory scheme chosen by the drafters of Espanola's Municipal Code, Archuleta neither resisted nor abused the police; we accordingly reverse.

**PROCEDURAL BACKGROUND**

3

The City of Espanola (City) filed a criminal complaint against Archuleta alleging four counts: "Refusing to Obey or Assist Officers [,] . . . Resisting, Evading, or Obstructing an Officer[,] . . . Disorderly Conduct[,] . . . [and] Battery." The City later amended its complaint and dropped all counts except Resisting, Evading or Obstructing an Officer in violation of Ordinance Section 70-211. The municipal court convicted Archuleta, and he appealed to the district court for a trial de novo.

Following trial the district court affirmed Archuleta's conviction. It found that Archuleta's identity was unknown to officers at the time of his detention and that his actions were insufficient to properly assert a constitutional right to defend his property with a weapon. The district court went on to analyze Archuleta's other actions and found that he refused to obey police orders during a valid investigation. Such refusals, the court concluded, constitute "resisting" but not abusing, under "Ordinance Section 70-211(a)(4)." The district court then remanded Archuleta's case to the municipal court for sentencing.

Archuleta appeals his conviction and argues that since our state constitution guarantees his right to bear arms for security and for the defense of his property, the police had no reason to detain him. He also argues that the ordinance, as applied, was unconstitutional; that by its interpretation of the ordinance, the district court denied

4

him the rule of lenity; that he was not properly notified of the charges against him; that the ordinance, as applied, was both overbroad and void for vagueness; that the district court committed error by not considering his post-trial motions and by not publishing written findings of fact; and finally, that the evidence presented at trial does not support his conviction under Ordinance Section 70-211(a)(4) of the Espanola Municipal Code. We agree with this last assertion and hold that substantial evidence does not support Archuleta's conviction under the scheme chosen by the drafters of the Espanola Municipal Code, specifically, Ordinance Sections 70-211(a)(4) and 70-212. We have no occasion to reach Archuleta's other arguments.

**DISCUSSION**

In determining whether sufficient evidence supports a conviction, we consider "the evidence in the light most favorable to the verdict." *State v. Prince*, 1999-NMCA-010, ¶ 15, 126 N.M. 547, 972 P.2d 859 (filed 1998). Interpretation of an ordinance is a matter of law subject to our de novo review using the same rules of construction applicable to statutes. *Kirkpatrick v. Bd. of County Comm'rs*, 2009-NMCA-110, ¶ 11, 147 N.M. 127, 217 P.3d 613.

Neither party disputes that Espanola Municipal Ordinance Section 70-211(a)(4) mirrors NMSA 1978, Section 30-22-1(D) (1981). Both the statutes and the ordinance

prohibit "resisting or abusing any . . . peace officer in the lawful discharge of his duties." *Id*. The district court concluded that Archuleta's behavior was insufficient to constitute "abusing" under the ordinance. We agree. *State v. Wade* 100 N.M. 152, 153, 667 P.2d 459, 460 (Ct. App.1983) ("By using the word 'abusing' the Legislature has prohibited certain speech.") (citation omitted).

Accordingly, in reviewing Archuleta's conviction, we ask two questions. First, can Archuleta's behavior be classified as "resisting?" Second, were the police lawfully discharging their duties at the time of Archuleta's alleged crime? Because we answer the first question in the negative, we do not reach the second.

In *Wade*, this Court interpreted Statute Section 30-22-1(D) within the framework of Statute Section 30-22-1 as a whole. Although our case law has suggested that resisting requires some physical act, we held in *Diaz* that resisting can include the failure to obey lawful commands from law enforcement officers.

*State v. Diaz*, 121 N.M. 28, 32, 908 P.2d 258, 262 (Ct. App. 1995), would seem to support the district court's conclusion. *Diaz* holds that resisting, as that term is used in Statute Section 30-22-1(D), refers not only to a defendant's overt physical act, but also to his failure to act when he refuses to obey lawful police commands. *Diaz* is a different case. In *Diaz*, officers responded to a domestic violence report and

found an intoxicated defendant yelling and waving a knife at his wife. They drew their weapons and ordered the defendant to drop the knife, but he refused to do so. *Id.* When the five officers "repeatedly ordered [the d]efendant to 'put down,' 'drop,' or 'throw' the knife," he backed down the road away from them and refused their commands. *Id.* at 29-30, 908 P.2d at 259-60. Ultimately, Diaz was blocked from the rear by a sixth officer and then shot by the police when they felt he "made a move toward them." *Id.* at 30, 908 P.2d at 260. He was subdued, arrested, and later convicted of aggravated assault on a police officer in violation of NMSA 1978, Section 30-22-22(A)(1) (1994), based on the allegation that he threatened the officers with a knife. *Id.* at 29, 908 P.2d at 259.

On appeal, this Court agreed with the defendant that his jury should have been instructed on Resisting an Officer under Section 30-22-1(D) and reversed his conviction. In reaching that holding, we concluded, "[i]f the jury believed the testimony that [the d]efendant challenged and directed profanity at the officers while holding a weapon, but did not actively threaten or menace them, then [the d]efendant could have been found guilty of resisting by abusing the officers." *Diaz*, 121 N.M. at 32, 908 P.2d at 262. This language also seems to incorporate an element of active resistance including a physical element of resisting we recognized in *Wade*. This

Court's attention in *Diaz* was not defining the offense, but ascertaining whether the facts present there could support resisting as a lesser-included offense. We also held that Diaz's actions in backing away from officers while holding on to the knife could fulfill the element of "evading" the officers, further justifying giving an instruction rooted in Statute Section 30-22-1(B).

This case is much different. In *Diaz*, when the first police officer arrived on the scene, the defendant was standing by a car whose windows he had just bashed out, yelling at his wife, and waving a knife. 121 N.M. at 30, 908 P.2d at 260. Based on appearances at the time defendant Diaz was first observed by an officer, there was every reasonable belief that criminal behavior was afoot. In this case, Archuleta was not intoxicated, nor did he engage in any verbal abuse or defiance of the officers when they appeared. He also put down the gun when ordered, albeit not immediately. In fact, the district court found that "the physical act here, and the only physical act here that would be appropriately considered, is you have an unknown individual, at four o'clock in the morning, standing on a piece of property, holding a gun, and [the police] are there to investigate." The district court concluded the crime was complete the moment Archuleta refused to cooperate. When defense counsel suggested that a mere failure to obey police orders was not resisting, the district court indicated that

failure to "comply with the orders given to secure the scene" was resisting. We agree with the dissent that two concerns are afoot: conduct with regard to police orders when a person is the subject of a criminal investigation, and conduct with regard to orders when a person is not. The statements made by the district court implicate both, but conclude that Archuleta's conduct constituted "resisting"—conduct occurring when a person is the subject of criminal suspicion by the police—of which Archuleta was convicted.

**Refusing is not Resisting in Espanola**

Based on *Diaz* and *Wade*, we interpret Statute Section 30-22-1(D) to include a prohibition of a defendant's active and defiant refusal to comply with lawful officer demands. But Archuleta was convicted under Ordinance Section 70-211(a)(4) of the Espanola Municipal Code. The City, unlike the state, has chosen to more minutely define its statutory scheme by enacting two municipal ordinances; Ordinance Section 70-211 prohibiting 'Resisting, evading or obstructing an officer," separating "resisting," and Ordinance Section 70-212 titled "Refusing to obey or assist officers," of which Archuleta was not convicted. The latter provides that "[n]o person shall fail or refuse to obey or comply with a lawful order of any police officer in the performance of his duty." We must now determine the effect of this separation of

9

prohibited conduct, which has no state statutory analogue.

The goal of statutory interpretation "is to give effect to the intent of the [L]egislature." *Lucero v. Richardson & Richardson, Inc.*, 2002-NMCA-013, ¶ 8, 131 N.M. 522, 39 P.3d 739 (filed 2001). As our first step in that process, we look to the plain meaning of the statute. *Id.*; *see U.S. Brewers Ass'n v. Dir. of N.M. Dep't of Alcoholic Beverage Control*, 100 N.M. 216, 219, 668 P.2d 1093, 1096 (1983). If the statute's plain meaning is not readily discernable because of ambiguity, we then apply other relevant rules of statutory construction. *See Martinez v. Cornejo*, 2009-NMCA-011, ¶ 17, 146 N.M. 223, 208 P.3d. 443 (filed 2008) (concluding that a statute's meaning was unambiguous and application of other rules of construction was therefore unnecessary). "[W]here two statutes pertain to the same general subject, the court's duty is to construe them so that effect is given to every provision of each[.]" *Johnson v. Francke*, 105 N.M. 564, 566, 734 P.2d 804, 806 (Ct. App. 1987); *see High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (holding that different relevant statutory provisions should be read together). A statute's drafters are also "presumed to have avoided surplusage in words and sentences." *Id.* § 46.7 at 265. Owing to the district court's inclusion of refusing to obey an officer in the idea of resisting, two ordinances are implicated though

10

Defendant was convicted under only one of them.

As we stated above, Ordinance Section 70-211(a)(4), which prohibits resisting, is identical to our Statute Section 30-22-1(D). "[R]esisting" as that term is used in Statute Section 30-22-1(D), includes a defendant's failure to follow police orders. Presumably then, Ordinance Section 70-211(a)(4) should likewise cover such conduct. However, the City has chosen to enact an additional provision within its statutory framework, Ordinance Section 70-212, which specifically prohibits refusing to obey an officer. This ordinance is analogous in part Statute Section 30-22-2. It is unclear whether Ordinance Section 70-212 in its entirety prohibits refusing to obey or comply with a lawful police order as a separate matter, since it is separated by a disjunctive "or" from a second complete idea, or as part of a conjunctive entirety that includes the second idea in that ordinance of refusing to assist an officer when requested to help prevent a breach of the peace, as suggested by the dissent. Either way, Espanola clearly separated the act of merely failing or refusing to accede to an officer's orders from the much more dynamic act of resisting an officer of which Defendant stands convicted.

It is well settled that courts should refrain from interpreting statutes in such a way as to embrace redundancy or as to render another statutory provision unnecessary.

11

*Martin v. Middle Rio Grande Conservancy Dist.*, 2008-NMCA-151, ¶ 10, 145 N.M. 151, 194 P.3d 766 (holding that "the courts, when construing statutory language, must presume that the [L]egislature did not intend . . . to perform a useless act when enacting the statute") (internal quotation marks and citation omitted); *State v. Javier M.*, 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1 (holding that statutes must "be construed so that no part of the statute is rendered surplusage or superfluous"); *City Comm'n of Albuquerque v. State ex rel. Nichols*, 75 N.M. 438, 444-45, 405 P.2d 924, 928 (1965) (holding that courts must "construe acts so that all of the acts of the [L]egislature will be operative"). As the authors of *American Jurisprudence* indicate,

> In the construction of statutes, the courts start with the assumption that the [L]egislature intended to enact an effective law, and the [L]egislature is not to be presumed to have done a vain or futile thing in the enactment of a statute. Thus, it is a general principle that the courts should, if reasonably possible to do so, interpret the statute or the provision being construed so as to give it efficient operation and effect as a whole. A court will not interpret a statute in such a way as to make a nullity of its provisions if a sensible construction is available.

73 Am. Jur. 2d *Statutes* § 164 (2009) (footnote omitted).

To hold that Ordinance Section 70-211(a)(4) prohibits a defendant's refusal to obey officer orders is either entirely separate from the next provision, Ordinance Section 70-212, or renders it unnecessary. Both would proscribe the same conduct if passive refusal to abide by an officer's requests or orders were at issue. Therefore, in

12

order to avoid a tautological reading of the Espanola Municipal Code, we hold that Ordinance Section 70-211(a)(4) *does not include* a defendant's mere refusal to obey. The City has chosen to prohibit refusing to obey in a separate provision, and accordingly, we must presume that the code's drafters chose to make their resisting statute more narrow than its state counterpart. The district court rejected this notion, but we hold that it did so erroneously.

**CONCLUSION**

Archuleta was originally charged under *both* Ordinance Sections 70-211 and 70-212. The charge for refusing to obey under Ordinance Section 70-212 was later dropped. Analyzing Statute Section 30-22-1(D), the district court specifically found that Defendant did not engage in any overt act of resistance or abusive conduct toward the officers—the elements of resisting that would be required for conviction. It also found that Archuleta refused to obey police and concluded that such behavior was sufficient to constitute resisting under Ordinance Section 70-211(a)(4). This specificity in the court's decision negates Defendant's guilt under that ordinance number based on these facts. This leap is unsupported by a close reading of the law. The two provisions, though identical when read side by side, cannot be interpreted identically because of the City's choice to include a discrete refusing statute. Under

13

this statutory framework, viewing the district court's findings in the light most favorable to the conviction, we hold that the evidence was insufficient to support Archuleta's conviction.  We reverse.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**I CONCUR:**

_____

**ROBERT E. ROBLES, Judge**

**CYNTHIA A. FRY, Chief Judge (dissenting)**

**FRY, Chief Judge (dissenting).**

I respectfully dissent. The majority concludes that interpreting Ordinance Section 70-211(a)(4) (the resisting and evading ordinance) so that it is consistent with our interpretation of the identical provision in Statute Section 30-22-1(D) (the resisting and evading statute) in *Diaz* would render Ordinance Section 70-212 unnecessary. I disagree. In my view, we can interpret the resisting and evading ordinance consistent with *Diaz* such that the ordinance includes Defendant's conduct in this case while still recognizing that Ordinance Section 70-212 has continued vitality because it applies to different conduct.

Just as we looked to the resisting and evading statute in interpreting the resisting and evading ordinance, we can find guidance in our interpretation of Ordinance Section 70-212 by looking to Statute Section 30-22-2. That statute, while not identical to Espanola Municipal Ordinance Section 70-212, is similar to it. Statute Section 30-22-2 states: "Refusing to aid an officer consists of refusing to assist any peace officer in the preservation of the peace when called upon by such officer in the name of the United States or the state of New Mexico[]" and that anyone who commits this violation is guilty of a petty misdemeanor. Case law cited in the annotations suggests that this statute is meant to enforce a police officer's right to ask lay citizens for assistance in maintaining the peace. *See Territory v. Taylor*, 11 N.M. 588, 600, 71 P. 489, 492 (1903) (noting the existence of a predecessor to Statute

15

Section 30-22-2, which allowed "a sheriff, or his legally constituted deputy, [to] call on any citizen or citizens to assist him in the execution of his office").

Espanola Municipal Ordinance Section 70-212 seems to have a similar scope. It states: "No person shall fail or refuse to obey or comply with a lawful order of any police officer in the performance of his duty or refuse to aid or assist, without justifiable cause, any police officer in the execution of his office when called upon to do so in any criminal case, or in the preservation of the peace, or in the apprehending or securing of any person for the breach of the peace." Ordinance Section 70-212. Thus, it seems reasonable to conclude that this ordinance and the corresponding statute are directed at compelling the cooperation of people who are not the targets of police action, while Statute Section 30-22-1 and Ordinance Section 70-211 are meant to proscribe conduct by people who *are* the focus of police attention. Consequently, we can construe Ordinance Sections 70-211 and 70-212 in a way that gives effect to both without reversing Defendant's conviction under Ordinance Section 70-211.

Defendant could properly be charged with violation of Ordinance Section 70-212 if he were a bystander observing a confrontation between a police officer and a suspect and if he refused to comply with a command directed at him by the officer seeking assistance in maintaining order or in attempting to arrest the suspect. Because those were not the circumstances in this case, it was appropriate to charge Defendant with and convict him of resisting under Ordinance Section 70-211 because Defendant

16

was the focus of the police activity; the officers knew only that they were dealing with a man armed with a shotgun who was not responding to their commands to put his gun down. The circumstances here are close to those in *Diaz*, and I cannot see any reasonable basis for distinguishing Ordinance Section 70-211 from Statute Section 30-22-1. I would affirm.

_____

**CYNTHIA A. FRY, Chief Judge**